NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2433-14T3[1]
A-2434-14T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent/
Cross-Appellant,

v.

CHARLES PURYEAR,

     Defendant-Appellant/
Cross-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

MARKUS BROWN,

     Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 24, 2015** |
| **APPELLATE DIVISION** |

        Argued May 11, 2015 — Decided June 24, 2015

        Before Judges Sabatino, Leone, and Gilson.

        On appeal from the Superior Court of New
        Jersey, Law Division, Essex County,
        Indictment Nos. 12-02-00556, 12-02-00557,
        and 12-02-00558.

---

[1] These appeals originally calendared back-to-back are consolidated for purposes of this opinion only.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant/ cross-respondent Charles Puryear (Joseph E. Krakora, Public Defender, attorney; Mr. Smith, of counsel and on the brief).

Andrew R. Burroughs, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent/cross-appellant (A-2433-14)/appellant (A-2434-14) State of New Jersey (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. Burroughs, of counsel and on the brief).

Deborah C. Collins, Assistant Deputy Public Defender, argued the cause for respondent Markus Brown (Joseph  E. Krakora, Public Defender, attorney; Michele A. Adubato, Designated Counsel, on the brief).

The opinion of the court was delivered by

GILSON, J.S.C. (temporarily assigned).

These related interlocutory appeals raise questions concerning the admissibility of custodial statements given by co-defendants to law enforcement.  Defendant Charles Puryear (Puryear) and defendant Markus Brown (Brown) were charged with crimes related to a fatal shooting that took place on November 26, 2011, in Newark, and an armed robbery that took place several days later in a motel in Sussex County.  Each defendant gave two custodial statements to law enforcement on December 5, 2011.  After a hearing, the trial court in Essex County ultimately suppressed the first statement given by Puryear, which concerned the robbery in Sussex County, and admitted

Puryear's second statement, which concerned the Essex County shooting. The trial court admitted Brown's first statement, which concerned the Sussex County robbery, and ultimately suppressed his second statement, which concerned the shooting in Essex County.

On these interlocutory appeals, Puryear argues that his second statement also should have been suppressed, and the State argues that the trial court erred in suppressing Puryear's first statement and Brown's second statement. Given the related facts and procedural history, we issue this consolidated opinion addressing all of the interlocutory appeals.

Having conducted a thorough review of the record in each case, and having considered all of the arguments, we affirm the well-reasoned decision by Judge Michael L. Ravin, and his companion order, issued on December 17, 2014, which suppressed one of the statements given by each defendant, but admitted the other statements.

## I.

The State alleges that on November 25, 2011, at approximately 10:00 p.m., Puryear and Brown approached a group of people on a street in Newark, New Jersey. Puryear pointed a .22 caliber handgun at the group, and shouted, "Don't move." The group of people attempted to run away, and Puryear fired

nine shots, hitting and killing one person.  Later, nine .22 caliber shell casings were recovered at the scene.

Concerning the Sussex County incident, the State alleges that on December 4, 2011, Puryear and Brown committed an armed robbery at the Rolling Hills Motel in Sussex County.  A gunshot was fired during that robbery, and the State Police were notified.  When State troopers arrived, they encountered Brown, who fled.  Following a search, Puryear and Brown were eventually apprehended in the early morning hours of December 5, 2011, near the motel.

When defendants were apprehended, they were both arrested and advised of their <u>Miranda</u> rights.[2]  Thereafter, defendants were taken to the State Police barracks.  While at the State Police barracks, each defendant was separately interviewed twice by law enforcement officers.  Puryear was first interviewed by a State Police detective and a State trooper.  That interview began shortly after 5:00 a.m. on December 5, 2011, and primarily focused on the alleged robbery at the motel in Sussex County.  A number of hours later, beginning at approximately 5:44 p.m. on December 5, 2011, Puryear was interviewed by two Essex County

---

[2]  <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 86 <u>S. Ct.</u> 1602, 16 <u>L. Ed.</u> 2d 694 (1966).

detectives. That interview primarily focused on the alleged shooting in Newark.

Brown was first interviewed on December 5, 2011, beginning at approximately 7:00 a.m., by the same State Police detective and State trooper who had interviewed Puryear. Several hours later, beginning at approximately 3:59 p.m. on December 5, 2011, Brown was interviewed by the same two Essex County detectives who would later interview Puryear.

At the beginning of all four interviews, the officers advised each defendant of his Miranda rights and each defendant signed Miranda waiver forms. The interviews were audio and video recorded. During each interview, Puryear and Brown made a number of incriminating statements.

## II.

Puryear and Brown were both indicted and charged with a number of crimes in Essex and Sussex Counties. In Essex County, they were charged under three different indictments. The charges against Puryear in Essex County included first-degree murder, first-degree robbery, and weapons-related offenses. The charges against Brown in Essex County included first-degree felony murder, first-degree robbery, and weapons-related offenses. The charges in Sussex County against both defendants

included first-degree robbery, second-degree burglary, aggravated assault, and weapons-related offenses.

In Essex County, defendants moved to suppress their statements, and the State moved to admit all four statements. The State also moved to use portions of those statements that did not directly relate to the charges in Essex County under N.J.R.E. 404(b).

The trial court conducted a three-day hearing. During that hearing, all four law enforcement officers who participated in the four interviews of defendants testified. The State also introduced and played at the hearing the audio and video recordings of each of the four statements. Transcripts of those statements were also provided to the trial court. The State also introduced into evidence copies of the Miranda waiver forms signed by each defendant. Defendants elected not to testify at the hearing and did not call any witnesses.

### III.

The trial court twice addressed the motions to suppress and admit the statements. Initially, the trial court issued a written opinion and order, dated September 8, 2014, and ruled that all four statements were admissible. The court reserved on the Rule 404(b) portion of the motion, which concerned whether the portions of the statements that did not directly relate to

the Essex County charges could be used as evidence of motive or intent. The court stated that it would address at trial limitations and possible redactions under Rule 404(b).

Defendants then moved for reconsideration. On December 17, 2014, the court granted partial reconsideration and issued a written decision and order. The trial court found that each of the defendants' Miranda rights had been violated in connection with one of the statements given by each defendant. The court also found that the other statement given by each defendant was admissible.

With regard to Puryear, the trial court ruled that his first statement was inadmissible. The trial court focused on a statement made by a State Police detective when Puryear first came into the interview room. Specifically, the detective told Puryear that he could not hurt himself by giving the statement, but he could only help himself:

> DET. PAULIS: The only thing you can possibly do here is help yourself out. You cannot get yourself in any more trouble than you're already in. You can only help yourself out here.
>
> So you've been helping yourself out with Trooper Donnelly. I just want to hear what you have to say as far as the explanation as to what happened tonight, all right.

A-2433-14T3

After making that statement, the detective then read Puryear his Miranda rights, and Puryear agreed to speak with the officers.

The trial court reasoned that the statement by the detective was incorrect and misleading. The court went on to reason that the statement by the detective "neutraliz[ed]" the Miranda warning that Puryear was given immediately after the detective's statement. The court then found that because of the detective's incorrect statement, the State had failed to show that Puryear made a knowing waiver of his Miranda rights.

Turning to Puryear's second statement, given to Essex County detectives, the trial court ruled that statement was admissible. The court found that Puryear was correctly advised of his Miranda rights and that Puryear knowingly, voluntarily and intelligently waived those rights.

The trial court also considered, but rejected, a number of other arguments put forth by Puryear. In that regard, the trial court found that when Puryear asked to speak to the mother of his child, he was not invoking his right to silence or counsel. The court also rejected Puryear's contention that his failure to respond immediately when the detective asked if Puryear wished to speak was not an invocation of his right to silence. In that regard, Puryear was twice asked if he wished to speak and he

delayed responding for approximately four seconds and seven seconds. When Puryear did not immediately respond, the detective reminded Puryear that he had the right not to speak. Thereafter, Puryear stated that he wished to speak to the officers. The court also found that Puryear had not been effectively ordered to sign the Miranda form. Finally, the court found that Puryear had been properly informed that there was a warrant out for his arrest.

Concerning the statements given by Brown, the trial court ruled that Brown's first statement was admissible, but his second statement was not admissible. The first statement, which was given to a State Police detective and trooper, concerned the Sussex County robbery. The court found that the officers properly advised Brown of his Miranda rights and that Brown knowingly, voluntarily and intelligently waived those rights and agreed to speak with the officers. The court noted, however, that it was reserving "on whether this statement, which concerns that Sussex County robbery, is admissible [in the Essex County matters] under N.J.R.E. 404(b)."

As to Brown's second statement, the trial court found that Brown had not knowingly and intelligently waived his Miranda rights. Specifically, the court focused on an explanation provided by an Essex County detective when Brown asked for

clarification of what it meant that his statements could be used against him in a court of law. In response, the detective told Brown that it meant that if Brown lied, his statement could be used against him. In that regard, the second recorded interview of Brown had the following exchange:

> DET. MCENROE: Okay. "Anything you say can be used against you in a court of law." You understand number - - number (2)?
>
> MR. BROWN: "Anything you say can be used against you in a court of law." So that means I may have to stand up in their court and say this again.
>
> DET. GONZALEZ: Well, what that's saying is anything you say can be used against you, - -
>
> MR. BROWN: (Indiscernible.)
>
> DET. GONZALEZ: - - meaning if you lie, it can be used against you.
>
> MR. BROWN: (Indiscernible.) Okay.

The court reasoned that the detective's explanation was an incorrect and misleading explanation of one of the Miranda warnings. The court then found that the State had not shown beyond a reasonable doubt that Brown understood all of his Miranda rights and he had not knowingly waived his rights.

IV.

We granted the State leave to appeal the suppression of Brown's second statement. We also granted Puryear and the State

leave to appeal the rulings concerning Puryear's statements. On appeal, Puryear makes two arguments:

> POINT I
>
> BECAUSE THE AUTHORITIES NEVER WITHDREW OR CORRECTED THE ADVICE GIVEN TO DEFENDANT THAT "YOU CAN ONLY HELP YOURSELF OUT" BY GIVING A STATEMENT, HIS SECOND STATEMENT, MADE ONLY HOURS LATER, ALSO HAD TO BE SUPPRESSED AS NOT KNOWING OR INTELLIGENT.
>
> POINT II
>
> THE STATE FAILED TO SCRUPULOUSLY HONOR DEFENDANT'S CLEAR INDICATION THAT HE DID NOT WISH TO MAKE A STATEMENT UNTIL AFTER HE HAD SPOKEN TO HIS BABY'S MOTHER, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH AMENDMENT AND OUR STATE CONSTITUTION.

The State argues that the trial court was correct in initially ruling that both statements by Puryear were admissible and it erroneously granted Puryear's motion for reconsideration. With regard to Brown, the State argues that the trial court erred in suppressing Brown's second statement.

V.

The Fifth Amendment of the United States Constitution guarantees all persons with the privilege against self-incrimination. This privilege applies to the states through the Fourteenth Amendment. Moreover, in New Jersey, there is a common law privilege against self-incrimination, which has been

A-2433-14T3

codified in statutes and rules of evidence.  N.J.S.A. 2A:84A-19; N.J.R.E. 503; State v. Reed, 133 N.J. 237, 250 (1993). Accordingly, it has long been established that when a person is taken into custody or otherwise deprived of his or her freedom that person is entitled to certain warnings before he or she can be questioned.  Miranda, supra, 384 U.S. at 478-79, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726.

Before any questioning, the defendant must be advised that she or he has the right to remain silent, that anything she or he says can be used against her or him in a court of law, that she or he has the right to have an attorney present during questioning, and that if she or he cannot afford an attorney one will be appointed for her or him before any questioning if she or he so desires.  Id. at 479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726.  These warnings are commonly referred to as "Miranda warnings."

After receiving Miranda warnings, a suspect may knowingly and intelligently waive these rights and agree to answer questions or make a statement.  Ibid.  The State, however, must establish beyond a reasonable doubt that a waiver of the Miranda rights was intelligent, voluntary and knowing.  State v. Nyhammer, 197 N.J. 383, 400-01, cert. denied, 558 U.S. 831, 130

S. Ct. 65, 175 L. Ed. 2d 48 (2009); State v. Presha, 163 N.J. 304, 313 (2000); State v. Galloway, 133 N.J. 631, 654 (1993).

In determining whether a statement is voluntary, courts consider the totality of the circumstances, including the characteristics of the accused and the details of the questions. State v. Knight, 183 N.J. 449, 462 (2005) (citing Galloway, supra, 133 N.J. at 654). "Relevant factors include the defendant's age, education, intelligence, advice concerning his [or her] constitutional rights, [the] length of detention, and the nature of the questioning." State v. Bey, 112 N.J. 123, 135 (1988) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854, 862 (1973)).

If a suspect invokes his or her right to silence or legal counsel, law enforcement must "scrupulously honor" that assertion, and all questioning must cease. See Michigan v. Mosley, 423 U.S. 96, 103-04, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313, 321 (1975); see also Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378, 386 (1981) (applying the same standard); State v. Alston, 204 N.J. 614, 624 (2011) (same).

When reviewing a trial court's decision on a motion to suppress statements, appellate courts generally defer to the fact-findings of the trial court when they are supported by

sufficient credible evidence in the record.  See Nyhammer, supra, 197 N.J. at 409 (citing State v. Elders, 192 N.J. 224, 243-44 (2007)); see also State v. W.B., 205 N.J. 588, 603 n.4 (2011) ("As the finding of compliance with Miranda and voluntariness turned on factual and credibility determinations, we need only find sufficient credible evidence in the record to sustain the trial judge's findings and conclusions." (citing Elders, supra, 192 N.J. at 242-44)).  Moreover, we defer to a trial court judge's findings "'which are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'"  State v. Davila, 203 N.J. 97, 109-10 (2010) (quoting State v. Johnson, 42 N.J. 146, 161 (1964) (internal quotation marks omitted)).  When a defendant's statement is videotaped, however, and "the trial court's factual findings are based only on its viewing of a recorded interrogation that is equally available to the appellate court . . . deference to the trial court's interpretation is not required."  State v. Diaz-Bridges, 208 N.J. 544, 566 (2012).  We review de novo the trial court's legal conclusions that flow from established facts.  See State v. Mann, 203 N.J. 328, 337 (2010).

VI.

A.

We first address the trial court's decision to grant reconsideration. The State argues that the trial court erred in changing its decision on a motion for reconsideration. We reject that argument. The court has the discretion and right to reconsider an interlocutory ruling at any time before the entry of final judgment in "'the sound discretion of the [] court to be exercised in the interests of justice.'" See State v. Timmendequas, 161 N.J. 515, 554 (1999) (quoting Pressler, Current N.J. Court Rules, comment 3 on R. 1:7-4 (1995), and noting that there is not an explicit rule for motions for reconsideration in criminal matters, but holding that such motions are permitted in criminal matters), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). See also State v. Campbell, 436 N.J. Super. 264, 273 (App. Div. 2014) (explaining that "the court can even reconsider its previous decision to admit the evidence, if subsequent developments support such reconsideration" (citing Cummings v. Bahr, 295 N.J. Super. 374, 384-88 (App. Div. 1996))).

Reconsideration is not to be granted lightly and the grounds for reconsideration are generally limited. The proper object of reconsideration is to correct a court's error or

oversight. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App.

Div. 2010). As we have explained, a motion for reconsideration

is

>           not appropriate merely because a litigant is
>           dissatisfied with a decision of the court or
>           wishes to reargue a motion, but "should be
>           utilized only for those cases which fall
>           into that narrow corridor in which either 1)
>           the [c]ourt has expressed its decision based
>           upon a palpably incorrect or irrational
>           basis, or 2) it is obvious that the [c]ourt
>           either did not consider, or failed to
>           appreciate the significance of probative,
>           competent evidence."
>
>           [Ibid. (quoting D'Atria v. D'Atria, 242 N.J.
>           Super. 392, 401 (Ch. Div. 1990)).]

See also R. 1:7-4(b) (governing reconsideration of final orders

or judgments); Cummings, supra, 295 N.J. Super. at 384

(explaining the grounds appropriate for reconsidering a final

judgment).

Here, the trial court candidly found that it had failed to

appreciate the significance of the explanation given by the

detective to Brown during his second interview concerning his

second Miranda warning; that second warning being that his

statements could be used against him in a court of law. The

trial court also found that it failed to appreciate the

significance of the introductory statement made by the State

Police detective to Puryear in his first interview advising

Puryear that he could not hurt himself by answering the

16                                                    A-2433-14T3

detective's questions.  Given the facts of these interviews, we find no abuse of discretion and no error by the trial court in its decision to grant reconsideration.

Indeed, it is entirely appropriate for a judge to reconsider a prior ruling given the right set of circumstances. Judges are not infallible.  Judges who are willing to admit that they overlooked competent evidence, or failed to appreciate such evidence, should be commended because they are doing just what good judges do in the very limited circumstances where reconsideration is appropriate.  Obviously, that is why there are rules for reconsideration.  See R. 1:7-4(b); R. 4:42-2; R. 4:49-2.

We also will address the court's ultimate substantive decisions concerning the suppression or admission of each of the statements given by defendants.  Our grant of interlocutory appeal included appeals from all aspects of the order on reconsideration.

### B.

We turn to the rulings on Brown's second statement.  As already noted, the trial court admitted Brown's first statement, which principally concerned the Sussex County robbery.  Brown has pled guilty to the charges in Sussex County, and he has not appealed the decision to admit his first statement.  As

previously pointed out, when the case is tried in Essex County the trial judge will address whether and how much of the first statement can be used under Rule 404(b).

The State appeals the decision to suppress Brown's second statement, which was given to Essex County detectives and which concerned the murder in Essex County. Specifically, the State argues that when Brown's second interview is reviewed in full context, Brown's inquiry about his second Miranda right - - that his statements could be used in court - - was really a concern that Brown did not want to testify in court.[3] In other words, the State argues Brown understood and knowingly waived all his Miranda rights, including Miranda Right No. 2, but he made it clear that he did not intend to testify at trial.

The State also argues that Brown had a prior criminal record and, therefore, he already understood his Miranda rights because of his prior interactions with the criminal justice system. See Knight, supra, 183 N.J. at 463 (explaining that it is relevant to consider a defendant's "previous encounters with law enforcement" in determining the voluntariness of a defendant's waiver of his Miranda rights). In addition, the

---

[3] The trial court and the parties have referred to Miranda Right No. 2. Though it might be more accurate to describe that as a warning (that is, the statements can be used in court), for consistency, we will also refer to it as Miranda Right No. 2.

State argues that the trial court erred in relying on this court's decision in State v. Pillar, 359 N.J. Super. 249, 268 (App. Div.), certif. denied, 177 N.J. 572 (2003).

In Pillar, the defendant's conviction was reversed "due to the improper admission of a highly incriminating statement made by [the] defendant to police at the time of his arrest." Id. at 257. The defendant in Pillar was charged with sexually abusing a child. When questioned by law enforcement, the defendant invoked his right to have an attorney before providing a statement. Id. at 262. The defendant then stated that he wanted to "say something 'off-the-record.'" Ibid. After the detectives who were interviewing the defendant in Pillar agreed to listen, the defendant confessed to fondling the minor victim. This court held "that the statement, made immediately following administration of Miranda warnings and after an assurance from an officer that [the] defendant could make a statement 'off-the-record,' was not only obtained in violation of Miranda but was involuntary." Id. at 257.

The trial court correctly found that the detective's explanation of the Miranda Right No. 2 was incorrect. While the trial court acknowledged that Brown's request for clarification may have stemmed from a concern about testifying at trial, the court found that did not change that Brown was given an

incorrect explanation of his <u>Miranda</u> Right No. 2.  It is the "responsibility of law-enforcement authorities to inform defendants of their rights [] with the proper administration of <u>Miranda</u> warnings."  <u>State v. Adams</u>, 127 <u>N.J.</u> 438, 448 (1992) (citing <u>State v. McKnight</u>, 52 <u>N.J.</u> 35, 47 (1968)).  "A police officer cannot directly contradict, out of one side of his mouth, the <u>Miranda</u> warnings just given out of the other." <u>Pillar</u>, <u>supra</u>, 359 <u>N.J. Super.</u> at 268.  <u>See also</u> <u>United States v. Ramirez</u>, 991 <u>F. Supp.</u> 2d  1258, 1269-70 (S.D. Fla. 2014) (telling a defendant if he or she did not answer questions "it would be worse" contradicted the <u>Miranda</u> safeguards).

The trial court also correctly found that the detective's incorrect explanation of Brown's <u>Miranda</u> rights was not cured by Brown's prior contact with the criminal justice system.  Here, the State showed only that Brown had been arrested in 2005 and pled guilty in 2008, but did not offer proof that such prior experience enabled him to understand his <u>Miranda</u> rights despite the detective's incorrect explanation of his <u>Miranda</u> Right No. 2.  Absent a more specific showing by the State, the trial court did not err in making such a finding.

The focus of a <u>Miranda</u> analysis should be on whether the defendant had a clear understanding and comprehension of his or her <u>Miranda</u> rights based on the totality of the circumstances.

Nyhammer, supra, 197 N.J. at 402. Moreover, as already pointed out, the burden is on the State to prove beyond a reasonable doubt that a defendant's waiver is knowing, voluntary, and intelligent. The trial court here found that the State had not shown beyond a reasonable doubt that Brown understood the nature of his Miranda Right No. 2 and the consequences of waiving that right. We defer to such "factual findings made by the trial court[.]" Id. at 409.

Given the totality of the circumstances in this case, the trial court's findings that the State failed to prove that Brown completely understood all of his Miranda rights are adequately supported by credible evidence in the record. Moreover, our independent review of the video of Brown's second interview does not lead us to a different conclusion. Consequently, the trial court's decision to suppress Brown's second statement is affirmed.

### C.

We now review the rulings on Puryear's statements. The State argues that we should reverse the trial court's ruling on reconsideration, which held that Puryear's first statement concerning the Sussex County robbery was inadmissible. Puryear argues that the trial court correctly suppressed his first statement, but erred in not suppressing his second statement

concerning the Essex County murder.  We find neither of these arguments persuasive.

1.

On appeal, the State argues that "there is no credible evidence that [Puryear] did not understand his Miranda rights." The trial court, however, ultimately found otherwise.  The court focused on the instruction given by the State Police detective that Puryear could not hurt himself and could only help himself by providing a statement.  The court found that instruction was incorrect and directly contradicted the Miranda warning that anything the suspect says can be used against him in a court of law.  The court then found that the detective's incorrect explanation of the consequences of giving a statement was not cured by Puryear's prior contact with the criminal justice system.  Thus, the court found that the State had not carried its burden of proving that Puryear knowingly waived his Miranda rights.

The factual findings by the trial court are supported by sufficient credible evidence in the record.  The State contends that "while awkwardly phrased," the detective's instruction simply informed defendant that the evidence against him was overwhelming.  That characterization of the instruction does not change the fact that the instruction contradicted a key Miranda

22

warning. Moreover, the instruction by the detective was not a permissible interrogation technique. See Pillar, supra, 359 N.J. Super. at 268; cf. State v. Patton, 362 N.J. Super. 16, 31, 46 (App. Div.), certif. denied, 178 N.J. 35 (2003) (explaining that New Jersey courts allow some "trickery" in interrogation techniques, but do not allow fabrications of evidence). That the State seeks to admit Puryear's statement against him shows that Puryear could hurt himself by giving the statement.

The State also points out that in its initial decision admitting Puryear's first statement, the trial court relied upon State v. Miller, 76 N.J. 392 (1978), but on reconsideration it did not explain how Miller was distinguishable. In Miller, the Supreme Court held that it was not a violation of Miranda for a police officer to "[a]ppeal[] to a person's sense of decency and urg[e] him to tell the truth for his own sake." Miller, supra, 76 N.J. at 405. The Court went on to recognize, however, that depending on the context, such techniques can move into a "shadowy area." Id. at 403-04. Consequently, Miller is distinguishable on the specific facts of this case.

Indeed, the Supreme Court has clarified the fact-sensitive basis of motions to suppress because in another case, the Court upheld the suppression of a statement because the defendant was advised that by answering questions she "would actually benefit"

herself.  State ex rel. A.S., 203 N.J. 131, 151 (2010).  In A.S., the Court held that advice "contradicted the Miranda warning provided to [the defendant]: that anything she said in the interview could be used against her in a court of law."  Ibid. (citing Pillar, supra, 359 N.J. Super. at 268).

In short, it is well-established that the question of whether Miranda rights are knowingly, intelligently and voluntarily waived is a fact-specific analysis.  Based on the specific facts found by the trial court, we find no error in the court's decision to suppress Puryear's first statement.

2.

We also find no error in the trial court's decision to admit Puryear's second statement.  The second statement was given several hours after the first statement and primarily focused on a different crime.  Importantly, the second statement was given to different law enforcement officers, who gave Puryear fresh Miranda warnings and had Puryear execute a separate written Miranda waiver form.  Thus, the trial court found that that second statement was given after Puryear knowingly, voluntarily and intelligently waived his Miranda rights.

Puryear argues that the second statement was contaminated by the incorrect instruction given during the first statement.

24                              A-2433-14T3

Puryear goes on to assert that his situation is analogous to an impermissible "question first and warn later" technique.  See Missouri v. Seibert, 542 U.S. 600, 611-12, 124 S. Ct. 2601, 2610, 159 L. Ed. 2d 643, 655 (2004).  In Seibert, the police interrogators adopted an official policy of inducing confessions prior to providing Miranda warnings and then eliciting the same confession to the same crime.  The United States Supreme Court stated that such a procedure "render[ed] Miranda warnings ineffective."  Id. at 611, 124 S. Ct. at 2610, 159 L. Ed. 2d at 654.  The facts in Seibert are clearly distinguishable.  Moreover, the trial court here found that there was a clear break between the two separate interviews and that fresh Miranda warnings cured any problem with the instruction given at the beginning of the first interview.  Again, those fact-findings are supported by substantial credible evidence in the record.

Puryear also argues that because he repeatedly asked to speak with the mother of his child, he was effectively expressing a desire to remain silent.  Puryear, however, told the detectives that he wanted to tell the mother of his child that she should move on without him.  The trial court reviewed the video of the interview and found that the request by Puryear to speak with the mother of his child was not an invocation of his right to remain silent.  Our independent review of the

recorded interview supports that same finding. In short, Puryear's request to speak with the mother of his child was not an invocation of his right to remain silent. See Diaz-Bridges, supra, 208 N.J. at 567 (holding that "requests by an adult to speak with someone other than an attorney . . . do not imply or suggest that the individual desires to remain silent" (citing State v. Martini, 131 N.J. 176, 228-32 (1993))).

## VII.

In summary, we find no reversible error in the trial court's decision to suppress Brown's second statement and suppress Puryear's first statement. We also find no reversible error in the trial court's decision to admit Puryear's second statement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2433-14T3