RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2878-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

L.H.,

 Defendant-Appellant.
_____________________________

 Submitted April 4, 2017 – Decided August 2, 2017

 Before Judges Fisher and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Indictment
 No. 12-05-1445.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alicia J. Hubbard, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Carolyn A. Murray, Acting Essex County
 Prosecutor, attorney for respondent (Kayla
 Elizabeth Rowe, Special Deputy Attorney
 General/Acting Assistant Prosecutor, of
 counsel and on the brief).

PER CURIAM
 Defendant L.H. appeals his conviction and sentence following

a guilty plea. More particularly, he appeals the court's denial

of his motions to suppress his statement to the police and to

suppress an out-of-court identification. We reverse in part and

vacate in part.

 I.

 During the summer of 2011, two women were sexually assaulted,

and another woman was the victim of an attempted sexual assault.

Defendant was taken into custody, interrogated about the assaults,

and provided a statement to police. In addition, one of the victims

made an out-of-court identification of defendant in a photo array

presented by the police.

 A grand jury indicted defendant for two counts of first-

degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (counts one and six);

four counts of first-degree aggravated sexual assault, N.J.S.A.

2C:14-2(a)(3) (counts two, three, seven, and eight); three counts

of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1)

(counts four, nine, and twelve); two counts of third-degree

terroristic threats, N.J.S.A. 2C:12-3(a) (counts five and ten),

and first-degree attempted aggravated sexual assault, N.J.S.A.

2C:5-1 and 2C:14-2(a)(3) (count eleven). Following the indictment,

defendant moved to suppress the statements he made during the

 2 A-2878-14T3
custodial interrogation and separately to suppress the victim's

out-of-court identification. The court denied defendant's motions.

 Defendant subsequently pled guilty to two counts of first-

degree kidnapping, two counts of first-degree aggravated sexual

assault, and one count of first-degree attempted aggravated sexual

assault. He was sentenced to an aggregate twenty-year custodial

sentence subject to the requirements of the No Early Release Act,

N.J.S.A. 2C:43-7.2, parole supervision for life pursuant to

N.J.S.A. 2C:43-6.4, and Megan's Law, N.J.S.A. 2C:7-2. This appeal

followed.

 On appeal, defendant makes the following arguments:

 POINT I

 BECAUSE THE POLICE OBTAINED A CONFESSION ONLY
 AFTER LYING TO [DEFENDANT] BY SPECIFICALLY
 PROMISING THAT ANY CONVICTION PREMISED UPON
 THE CONFESSION WOULD NOT RESULT IN
 INCARCERATION, THE STATEMENT MUST BE
 SUPPRESSED.

 POINT II

 THE MOTION TO SUPPRESS THE OUT-OF-COURT
 IDENTIFICATION SHOULD HAVE BEEN GRANTED
 BECAUSE THE STATE'S FAILURE TO RECORD THE
 NECESSARY DETAILS OF THE PHOTOGRAPHIC
 IDENTIFICATION PROCEDURE WAS CONTRARY TO STATE
 V. DELAGADO AND R. 3:11.

 II.

 Defendant first argues the court erred by denying his motion

to suppress his statement to police. He claims his statement was

 3 A-2878-14T3
not given voluntarily because the police misled him during the

interrogation by advising him that he would receive counseling,

and would not be jailed, if he spoke with them. We agree.

 When reviewing a trial court's denial of a motion to suppress

a defendant's statement, we must "engage in a 'searching and

critical' review of the record." State v. Maltese, 222 N.J. 525,

543 (2015) (quoting State v. Hreha, 217 N.J. 368, 381-82 (2014)),

cert. denied, ___ U.S. ___, 136 S. Ct. 1187, 194 L. Ed. 2d 241

(2016). We defer to the trial court's findings supported by

sufficient credible evidence in the record, particularly when they

are grounded in the judge's feel of the case and ability to assess

the witnesses' demeanor and credibility. State v. Robinson, 200

N.J. 1, 15 (2009); State v. Elders, 192 N.J. 224, 243-44 (2007).

This standard of review applies even where the motion court's

"factfindings [are] based on video or documentary evidence," such

as recordings of custodial interrogations by the police. State v.

S.S., __ N.J. __, __ (2017) (slip op. at 18, 24-25).

 We will not reverse a motion court's findings of fact based

on its review of a recording of a custodial interrogation unless

the findings are clearly erroneous or mistaken. Id. at 16-17. We

review issues of law de novo. Id. at 25; State v. Shaw, 213 N.J.

398, 411 (2012).

 4 A-2878-14T3
 At a hearing challenging the admission of statements made

during a custodial interrogation, the "state must prove beyond a

reasonable doubt that a defendant's confession was voluntary and

was not made because the defendant's will was overborne." State

v. Knight, 183 N.J. 449, 462 (2005). The State must also prove

"the defendant was advised of his rights and knowingly, voluntarily

and intelligently waived them." State v. W.B., 205 N.J. 588, 602

n.3 (2011).

 The determination of whether the State has satisfied its

burden of proving beyond a reasonable doubt a defendant's statement

was voluntary requires "a court to assess 'the totality of the

circumstances, including both the characteristics of the defendant

and the nature of the interrogation.'" Hreha, supra, 217 N.J. at

383 (quoting State v. Galloway, 133 N.J. 631, 654 (1993)). We must

determine "whether, under the totality of the circumstances, the

confession is 'the product of an essentially free and unconstrained

choice by its maker' or whether 'his will has been overborne and

his capacity for self-determination critically impaired.'" State

v. Pillar, 359 N.J. Super. 249, 271 (App. Div.) (quoting

Schneckloth v. Bustamonte, 412 U.S. 218, 225-26, 93 S. Ct. 2041,

2046-47, 36 L. Ed. 2d 854, 862 (1973)), certif. denied, 177 N.J.

572 (2003). The "factors relevant to that analysis include 'the

suspect's age, education and intelligence, advice concerning

 5 A-2878-14T3
constitutional rights, length of detention, whether the

questioning was repeated and prolonged in nature, and whether

physical punishment and mental exhaustion were involved.'" Hreha,

supra, 217 N.J. at 383 (quoting Galloway, supra, 133 N.J. at 654).

The court should also consider defendant's prior encounters with

law enforcement and the period of time that elapsed between the

administration of Miranda warnings and defendant's confession.

Ibid.

 During a custodial interrogation, an officer may use

"psychological coercion including trickery and deceit," without

violating a defendant's right against self-incrimination. State

v. Patton, 362 N.J. Super. 16, 29-31 (App. Div.), certif. denied,

178 N.J. 35 (2003)). "[M]isrepresentations by police officers to

the subject of an interrogation are relevant in analyzing the

totality of the circumstances," but "misrepresentations alone are

usually insufficient to justify a determination of involuntariness

or lack of knowledge." State v. Cooper, 151 N.J. 326, 355 (1997)

certif. denied, 528 U.S. 1084, 1205 S. Ct. 809, 145 L. Ed. 2d 681

(2000); accord Pillar, supra, 359 N.J. Super. at 269. "Moreover,

a misrepresentation by police does not render a confession or

waiver involuntary unless the misrepresentation actually induced

the confession." Pillar, supra, 359 N.J. Super. at 269 (quoting

Cooper, supra, 151 N.J. at 355).

 6 A-2878-14T3
 Likewise, an officer's promise of leniency is a factor in the

totality of circumstances analysis. Hreha, supra, 217 N.J. at 383.

However, "certain promises, if not kept, are so attractive that

they render a resulting confession involuntary." Pillar, supra,

359 N.J. Super. at 273 (quoting Streetman v. Lynaugh, 812 F.2d

950, 957 (5th Cir.), reh'g denied, 818 F.2d 865 (5th Cir. 1987)).

For example, "a promise of immunity in the form of an assurance

by police that a statement would not be used against an accused,

or would be considered confidential" renders a statement

involuntary. Id. at 269.

 A court should consider the circumstances surrounding a

promise, including "the nature of the promise, the context in

which the promise was made, the characteristics of the individual

defendant, whether the defendant was informed of his rights, and

whether counsel was present." Hreha, supra, 217 N.J. at 383-84

(quoting Pillar, supra, 359 N.J. Super. at 271). "Those

considerations should be assessed qualitatively, not

quantitatively, and the presence of even one of those factors may

permit the conclusion that a confession was involuntary." Id. at

384. Whether a statement by a law enforcement officer constitutes

a promise must be viewed from the defendant's perspective. State

v. Fletcher, 380 N.J. Super. 80, 92 (App. Div. 2005).

 7 A-2878-14T3
 Defendant argues that his statements were not voluntary

because the police misled him by suggesting that if he spoke about

what occurred he would get counseling. Defendant also asserts the

police misled him by making "false promises of no jail time" if

he spoke to them. Defendant contends that as a result of the

officer's tactics, his will was overborne and his confession was

not voluntary. The record supports his arguments.

 Throughout the interrogation the officers told defendant he

needed counseling to address issues he had with women and to

prevent the commission of future acts of sexual assault. They

consistently advised him that speaking with them would help

determine the counseling he needed and facilitate his receipt of

counseling. As correctly determined by the trial court, the

officer's statements about counseling alone did not render

defendant's confession involuntary under the totality of the

circumstances. See, e.g., State v. Miller, 76 N.J. 392, 398, 404

(1978) (finding officer's promise to "do all he could to help

defendant" if defendant spoke about the crimes "did not contribute

to an 'overbearing of his will'" under the totality of the

circumstances); Miller v. Fenton, 796 F.2d 598, 610, 612 (3d Cir.

1986) (finding under the same facts, the officer's promise of help

to defendant in obtaining treatment did not constitute a direct

 8 A-2878-14T3
promise of leniency in the criminal proceedings and did not

overbear defendant's will).

 The officers, however, did not limit their efforts to convince

defendant to speak with them to their statements about counseling.

The officers also promised defendant that if he spoke to them, he

would not go to jail. During an exchange with the officers

defendant said he was tired, and one of the officers asked if

defendant wanted something to eat or drink. In response, defendant

asked "Am I going to jail tonight? Is this going to be my last

meal or something like that?" The officer replied, "No, no, not

at all."

 Defendant responded to the officer's statement that he would

not go to jail that evening, stating "That's what everybody says."

He then explained that "the last time something happened" and he

"told [the police] the truth," it "quickly happened," indicating

that he was immediately jailed. The officers understood the

statement as such. In response, one of the officers said "that's

not gonna happen - it's not gonna go down like that," thus assuring

defendant that unlike in his prior case where he told the truth

and was jailed, that would not happen here.

 The other officer reinforced the false impression, stating

"I tell everybody who I interview in this room the same thing. .

. . I'm gonna lock you up, I'm gonna tell you I'm gonna lock you

 9 A-2878-14T3
up." But the officer never contradicted the first officer's

statement that defendant would not be jailed if he confessed, and

during the interrogation did not tell defendant he would be "locked

up" until after defendant confessed to his involvement in the

sexual assaults.

 Defendant also expressed hesitancy in responding to the

questions, stating he felt like he was "shooting [himself] in the

foot," and repeating that he would like counseling. The officers

agreed defendant needed counseling, and explained they needed to

obtain his statement about what occurred to "find out exactly

where [defendant was] as far as getting the help [he] need[ed]."

Defendant then asked, "The help I need is not sending me to jail

is it?" Again reinforcing that defendant would receive counseling

and not go to jail if he confessed, the officer responded, "Not

at all. Nobody gets rehabilitated in jail."

 The officers' statements that information supplied by

defendant was required only to provide him with counseling, and

would not result in him being jailed, made a false promise. On

three separate occasions and in three different ways, the officers

assured defendant that if he spoke with them, he would not be put

in jail.

 In State v. Puryear, 441 N.J. Super. 280, 288 (App. Div.

2015), we affirmed the trial court's suppression of a statement

 10 A-2878-14T3
where a detective told the defendant, "[t]he only thing you can

possibly do here is help yourself out. You cannot get yourself in

any more trouble than you're already in. You can only help yourself

out here." The detective then read the defendant his Miranda1

rights and the defendant agreed to speak with the officers. Id.

at 289. We found the officer's instruction "contradicted a key

Miranda warning" and "was not a permissible interrogation

technique" because the fact that the State sought to admit the

defendant's statement showed that the defendant "could hurt

himself by giving the statement." Id. at 298.

 Here, the officers' representations that defendant would not

be jailed similarly misled defendant by suggesting that a

confession would only help him to obtain counseling, and would not

result in his incarceration. The representations were in direct

contravention of the same key Miranda warning at issue in Puryear:

that anything defendant said could be used against him. Id. at

298; see also Pillar, supra, 359 N.J. Super. at 268 ("A police

officer cannot directly contradict, out of one side of his mouth,

the Miranda warnings just given out of the other.").

 In Fenton, supra, 796 F.2d at 610, the court noted that where

implicit or explicit promises of psychiatric help suggest a

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 11 A-2878-14T3
defendant will be treated rather than prosecuted, and thereby

trick the defendant into confessing, the confession may be

involuntary. Id. at 608. The court determined the officers'

promises of help in that case did not render the defendant's

confession involuntary because there was "no direct promise of []

leniency" and that "the only outright promise [] made was to get

[the defendant] help with his psychological problem." Id. at 610.

In contrast, here the officers' statements went well beyond

promises about counseling. The officers directly assured defendant

that if he spoke with them, he would not be jailed.

 The record also shows that defendant was induced to confess

by the officers' promises. See Pillar, supra, 359 N.J. Super. at

269 ("a misrepresentation by police does not render a confession

or waiver involuntary unless the misrepresentation actually

induced the confession"); cf. Fenton, supra, 796 F.2d at 612

(finding the defendant made a statement based on a desire to come

clean rather than on a promise of leniency or psychiatric help).

The officers relied on defendant's desire for counseling as the

sole enticement for defendant to speak with them, and stated they

needed defendant's statement in order to assess his need for

"help." However, it was not until the officers assured defendant

that his statements would not result in incarceration, and that

 12 A-2878-14T3
the "help" they discussed did not include jail, that defendant

admitted his involvement in the offenses.

 We are not persuaded by the contention that because defendant

had a prior encounter with law enforcement, he therefore knew that

the statements he made could result in his incarceration. While

prior encounters with law enforcement are a factor in determining

the voluntariness of a waiver of Miranda rights, Hreha, supra, 217

N.J. at 383, here the officers advised defendant to ignore his

prior encounter with law enforcement by assuring him that situation

was "different." As noted, following the officers' initial

assurance defendant would not go to jail, defendant explained that

in a prior encounter with the police, he was quickly jailed after

providing a statement. In response, the officers assured defendant

"that's not gonna happen – it's not gonna go down like that."

Thus, the officers told defendant to disregard his prior encounter

with law enforcement.

 We are therefore constrained to conclude that the court erred

by denying the motion to suppress defendant's statement. The court

engaged in a detailed analysis of the circumstances but overlooked

that the officers' false promise of no incarceration directly

negated the Miranda warnings and induced defendant to confess.

Like the officers' promise in Pillar, the assurances defendant

would not go to jail presented an overwhelming enticement to admit

 13 A-2878-14T3
criminal activity without fear of incarceration, and "clearly had

the likelihood of stripping defendant of his 'capacity for self-

determination,'" Pillar, supra, 359 N.J. Super. at 272-73.

(quoting Schneckloth, supra, 412 U.S. at 225-26, 93 S. Ct. at

2046-47, 36 L. Ed. 2d at 862). It thereby requires the conclusion

that the State failed to establish defendant's statement was

voluntary beyond a reasonable doubt. See id. at 273.

 III.

 Defendant also contends the court erred by denying his motion

to suppress the out-of-court identification made by one of the

victims. Defendant argues the out-of-court identification, which

occurred during the fifteenth showing of various photo arrays to

the victim, should have been suppressed because the State failed

to comply with the recording requirements for out-of-court

identification procedures under Rule 3:112 and the principles

established in State v. Delgado, 188 N.J. 48 (2006).

 In its denial of defendant's motion to suppress the out-of-

court identification, the court stated that determining the

2
 We do not address defendant's contention the court should have
suppressed the out-of-court identification based on a failure to
comply with Rule 3:11 because the Rule was not in effect in 2011
when the identification procedures took place. Rule 3:11 did not
take effect until September 4, 2012.

 14 A-2878-14T3
admissibility of an out-of-court identification required analysis

under a two-part test. Citing State v. Madison, 109 N.J. 223

(1988),3 the court found defendant must first demonstrate that the

identification procedure was impermissibly suggestive and then the

court will then consider the reliability of the identification.

The court noted that the second prong of the test required a

determination of whether the impermissible suggestiveness would

lead to a very substantial likelihood of irreparable

misidentification.

 Applying the Madison standard,4 the court found that "the

composition of the [photo] arrays and manner in which they were

displayed [to the victim here] is not disputed." The court based

its findings on its review of the photo arrays and "information

packets" that "were completed and preserved along with the

photographs shown to the witness at the time [she] made her

identification as well as the prior times when she was shown the

photo arrays." Based on the court's review of the photographs and

3
 In Madison, id. at 232, our Supreme Court adopted the standard
established by the United States Supreme Court in Manson v.
Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).
4
 The out-of-court identification at issue here occurred prior to
our Supreme Court's decision in State v. Henderson, 208 N.J. 208
(2011), which established a new framework for determining the
admissibility of such identifications. The Court held that its
decision applied prospectively. Id. at 302.

 15 A-2878-14T3
packets, it found that during each of the fifteen identification

procedures, the victim was sequentially shown the photographs in

the arrays by a detective not involved in the investigation, and

that the photographs were of individuals having similar physical

features. The court also found each information packet noted the

victim's demeanor when reviewing the photo arrays.

 The court held that defendant failed to make any showing of

impermissible suggestiveness, and therefore was not entitled to a

Wade5 hearing on his suppression motion. The court, however, did

not consider whether the alleged failure to make a record of the

photo array identification procedures in accordance with Delgado

necessitated a hearing on defendant's motion.

 In 2001, the New Jersey Attorney General's Office issued

guidelines "to ensure that identification procedures in this state

minimize the chance of misidentification of a suspect." Delgado,

supra, 188 N.J. at 61 (quoting Attorney General Guidelines for

Preparing and Conducting Photo and Live Lineup Identification

Procedures 1 (Apr. 18, 2001)). The guidelines directed an

administrator to:

 1. Record both identification and non-
 identification results in writing, including
 the witness' own words regarding how sure he
 or she is.

5
 United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.
2d 1149 (1967).

 16 A-2878-14T3
 2. Ensure that the results are signed and
 dated by the witness.

 3. Ensure that no materials indicating
 previous identification results are visible to
 the witness.

 4. Ensure that the witness does not write on
 or mark any materials that will be used in
 other identification procedures.

 [Ibid. (citing Attorney General Guidelines at
 7).]

 In Delgado, supra, 188 N.J. at 63, the Court exercised its

supervisory powers under Article VI, Section 2, Paragraph 3 of

the New Jersey Constitution and "require[d] that, as a condition

of the admissibility of an out-of-court identification, law

enforcement officers make a written record detailing the out-of-

court identification procedure, including the place where the

procedure was conducted, the dialogue between the witness and the

interlocutor, and the results." The Court stated, "[w]hen

feasible, a verbatim account of any exchange between the law

enforcement officer and witness should be reduced to writing," and

"[w]hen not feasible, a detailed summary of the identification

should be prepared." Ibid.

 In State v. Smith, 436 N.J. Super. 556, 574 (App. Div. 2014),

we determined the officers failed to comply with Delgado where

their report about a show-up procedure mentioned only that an

 17 A-2878-14T3
officer brought a victim to a suspect "to see if she could make a

positive [identification] on this possible suspect. . . . [and]

[the victim] related right away that he was the one who robbed

her." Id. at 568. We found "[t]he limited comments recorded by

police include [the victim's] identification, but omit what she

was told, her response, or a statement of the specific procedures

employed to effectuate the show-up." Ibid. We concluded that the

identification was not reliable under the Madison standard,

because the victim's account of the identification at the hearing,

and the show-up procedure itself, indicated suggestiveness. Id.

at 573.

 Defendant contends the information packets concerning the

fifteen identification procedures do not include the dialogue

between the victim and police as required by Delgado. Although the

court's findings were based on the information packets, they were

not marked in evidence and are not part of the record on appeal.

The court's factual findings, however, suggest that the packets

did not include a verbatim account of the discussions between the

officer and the victim, any showing that a verbatim account was

not feasible, or if not feasible, a detailed account of the

identification. See Delgado, supra, 188 N.J. at 63. Thus, it

appears that as defendant contends, the police may not have

complied with Delgado's requirements. Indeed, the court did not

 18 A-2878-14T3
make any findings that the information packets satisfied the

requirements in Delgado.

 We are convinced the court erred by denying defendant's

request for a hearing without first considering and making findings

concerning law enforcement's compliance with Delgado's

requirements, including whether compliance was feasible. Ibid.

Compliance with the recordation requirements is an issue separate

from whether defendant made a showing of suggestiveness under the

Madison standard. The recording requirement "protects a

defendant's rights allowing examination of whether the procedure

was impermissibly suggestive." Smith, supra, 436 N.J. Super. at

569. The Delgado requirements were intended to permit a defendant

to obtain evidence of suggestiveness. Thus, it would be illogical

to conclude that a defendant's failure to show suggestiveness

precludes a hearing on whether the Delgado requirements were met.

 We therefore vacate the court's denial of defendant's motion

to suppress the out-of-court identification. We remand for the

court to determine whether the police complied with Delgado's

requirements, including whether it was feasible for the police to

have done so. Any fact issues concerning compliance shall be

resolved at an evidentiary hearing. If it is determined there was

a lack of compliance, the court shall conduct such hearings it

deems necessary to determine the admissibility of the out-of-court

 19 A-2878-14T3
identification. See, e.g., id. at 568-73 (finding the evidence

presented at an evidentiary hearing showed the identification was

unreliable where the police recordation of an identification

procedure was deficient under Delgado).

 We add that a failure to properly record the identification

procedures as required under Delgado does not necessarily require

the court to suppress the identification. See Delgado, supra, 188

N.J. at 64-65 (rejecting defendant's claim that the failure to

make a detailed record of the out-of-court identification

procedures denied him a fair trial because the defendant learned

the details of every identification and nonidentification through

police reports, a Wade hearing, and the witness's testimony at

trial); State v. Joseph, 426 N.J. Super. 204, 223-24 (App. Div.

2012) (stating that the failure to retain photos from an array

"does not automatically result in the suppression of an out-of-

court identification," but rather, "if not explained, should be

weighed in deciding upon the probative value of the

identification") (quoting State v. Janowski, 375 N.J. Super. 1, 9

(App. Div. 2005)).

 Reversed in part, vacated in part. Remanded for further

proceedings in accordance with this opinion. We do not retain

jurisdiction.

 20 A-2878-14T3