**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2229-16T2

IN THE MATTER OF PAUL
WILLIAMS, DEPARTMENT
OF HUMAN SERVICES,
GREYSTONE PARK
PSYCHIATRIC HOSPITAL.

_____

Submitted October 10, 2018 – Decided February 4, 2019

Before Judges Suter and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2014-252.

Hunt, Hamlin & Ridley, attorneys for appellant Paul Williams (Raymond L. Hamlin, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Department of Human Services, Greystone Park Psychiatric Hospital (Melissa H. Raksa, Assistant Attorney General, of counsel; Rimma Razhba, Deputy Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Paul Williams appeals the November 23, 2016 denial by the Civil Service Commission (CSC) of his motion for reconsideration of a CSC Final Agency Decision that terminated his employment at Greystone Park Psychiatric Hospital (Greystone). We affirm.

I.

We glean the facts from the hearing record. Williams was employed as a Human Services Technician (HST) at Greystone for twenty-three years. On October 17, 2012, he was assigned "one-to-one"[1] observation of D.S., a patient who had a history of assaultive behavior.[2] Williams was doing paperwork behind the patient information center, which was a "horseshoe shaped desk." D.S. approached the desk, standing across from Williams and asked him, "[w]hat the fuck are you looking at?" After a short exchange where Williams told D.S. to "go ahead somewhere and sit down," D.S. grabbed a pen and said to Williams "I should have stabbed you with the pen," to which Williams replied "go ahead." D.S. then

---

[1] "One-to-one" monitoring requires an HST to remain within five feet of a patient.

[2] D.S. pushed another patient, struck another HST, threw toner and a garbage can, and spat at an HST, all within the prior four months.

A-2229-16T2

"plucked"[3] Williams in the head. He would not return the pen at Williams' request, responding "[n]o, I should have stabbed somebody else" while "plucking" Williams in the head again. Williams stood up, walked around the desk and through a door to where D.S. then was standing. The videotape of the incident showed D.S. starting to back up with his arms down to his side. Williams pushed D.S. to the floor causing D.S.'s feet to "come up over . . . him." Williams grabbed the pen from D.S. and returned to his work station. D.S., who was on the floor, started to laugh.

Greystone charged Williams with: mental abuse of a patient, Department of Human Services Administrative Order (A.O.) 4:08-C.3; mistreatment of a patient, A.O. 4:08-C.5; conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(11); neglect of duty, loafing, idleness or willful failure to devote attention to tasks which could result in danger to persons or property, A.O. 4:08-B.2; and violation of hospital policy and procedure, A.O. 4:08-E.1. The Amended Preliminary Notice of Disciplinary Action stated:

> On October 17, 2012, at approximately 11:45 a.m., you pushed patient D.S. violently to the floor on unit E3.
>
> In addition, D.S. was your 1:1 and you neglected your duty in not properly following the 1:1 special observation policy. You falsified an incident report. Your behavior

---

[3] The term "plucked" is not defined, but Williams also used the words "poked me in my head" to describe the incident.

was unacceptable and constitutes conduct unbecoming a public employee.

Williams was suspended without pay. Greystone's proposed disciplinary action was removal.

A departmental hearing was conducted. The hearing officer recommended upholding the disciplinary action proposed by Greystone. Greystone issued a Final Notice of Disciplinary Action removing Williams from employment.

Williams appealed, requesting a contested case hearing. The Administrative Law Judge's (ALJ) Initial Decision found that Williams engaged in an act of inappropriate physical contact by pushing D.S., causing him to fall, and that this conduct was unbecoming a HST. She found D.S. provoked Williams, but that Williams "was more aggravated with D.S. than he was hostile to him."

The Director of Staff Development and Training at Greystone testified that all employees received training on how to deal with patients who become physically aggressive or assaultive. Williams received two days of training in June 2011. The Director testified that shoving a patient is never permitted.

The ALJ found that Williams "was well aware that shoving and pushing a client was not allowed and was inappropriate." Despite this, the ALJ rejected

the charge that Williams abused D.S. or neglected his duty because he did not intend to injure D.S. and because he did not leave D.S. unattended but had kept him in "eyesight" and "close proximity." The ALJ also rejected the charge that Williams filed a false report, but acknowledged that his report about the incident contained the misleading statement that D.S. had made a second attempt to hit him when this was not shown on the videotape.

The ALJ recommended a six-month suspension, not removal, because Williams lacked malicious intent and he did not have any prior major discipline. Relying on an unreported case, the ALJ found that Williams "momentarily 'snapped'" at the time when he pushed D.S., who was not hurt and was laughing. The ALJ found the "removal penalty totally ignore[d] [Williams] lack of a disciplinary history and his exemplary service . . . ." Greystone filed exceptions to the Initial Decision.

The CSC conducted an independent evaluation of the record, including a review of the videotape of the incident. In its' Final Agency Decision, the CSC adopted the ALJ's factual findings and her findings that sustained the charges of inappropriate physical contact of a patient and conduct unbecoming a public employee. Unlike the ALJ, the CSC found that the charge of physical abuse was sustained because neither "malice" nor "intent" were required to commit that

infraction.[4] The video showed Williams "calmly getting up from his desk, walking through a door, approaching D.S., violently pushing D.S. to the ground, and then calmly walking back to his desk." The CSC did not consider this to be "reflexive" conduct, but "deliberate." The CSC also sustained the charge of neglect of duty for the manner that Williams conducted one-to-one observation because Williams was seated at a desk, which acted as a barrier between himself and D.S.

In determining a penalty, the CSC considers "the nature of the appellant's offense, the concept of progressive discipline, and the employee's prior record." Here, the CSC did not adopt the ALJ's recommended penalty, instead finding that she "failed to fully appreciate the seriousness of [Williams'] conduct." The CSC rejected Williams' claim that he acted without malice. D.S. was not "acting aggressively at the moment when [Williams] pushed him." The CSC found there was no excuse for Williams' physical abuse of D.S. or inappropriate physical contact. His conduct warranted a "severe sanction" regardless of his length of service or lack of disciplinary history because "intentional patient abuse destroys public respect in the delivery of governmental services." It upheld Williams' removal from his

---

[4] A.O. 4:08 defines physical abuse as "a physical act directed at an individual, patient . . . of a type that could tend to cause pain, injury . . . and/or suffering. Such act includes . . . [an] individual patient . . . being kicked, pinched . . . [or] pushed . . . ."

6

employment because his record did not "evidence any reason to modify the penalty." The CSC later denied Williams' request for reconsideration because Williams did not present new information or evidence.

On appeal, Williams argues the CSC's decision to uphold his removal was arbitrary, capricious, or unreasonable. He contends there was no factual support for his removal, the CSC's assessment of his conduct was incongruent with the videotape, and it should have considered his prior disciplinary and employment history with Greystone as well as the overall safety of Greystone's employees in setting a penalty. He also relies on an unreported case.[5]

## II.

Our scope of review of an administrative agency's final determination is limited. In re Carter, 191 N.J. 474, 482 (2007). We will not interfere with an agency's final decision unless it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). See Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011). We accord a "strong presumption of reasonableness" to the agency's exercise of its statutorily delegated responsibilities. City of Newark v. Natural Res.

---

[5] An unpublished case does not constitute precedent and is not binding on any court. R. 1:36-3.

A-2229-16T2

Council, 82 N.J. 530, 539 (1980).  We are not, however, bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." Lourdes Med. Ctr. of Burlington Cty. v. Bd. of Review, 197 N.J. 339, 361 (2009).

Our review of an order denying reconsideration is even more limited. State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015).  Reconsideration is appropriate only where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).  "[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion."  Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

Williams argues the CSC's decision to uphold his removal as an HST was arbitrary, capricious and unreasonable because there was no factual support for his removal, and the CSC failed to take into consideration the impact of the workplace or his past disciplinary record.  There was ample evidence, however, to support the CSC finding that Williams' actions were "deliberate." When D.S. "plucked" him on the head with the pen, Williams stood up, walked around the desk,

walked through a door, and pushed D.S. to the floor while D.S.'s arms and hands were down and he was retreating. Williams was trained not to do this. There was testimony that shoving a patient was never permitted and that Williams knew this.

Williams argues the CSC did not consider the safety of the institution in light of a patient known to be aggressive. However, the CSC did consider the institution. The CSC found that "an individual in [Williams'] position is entrusted with the care of psychiatric patients and his interactions with a client should be above reproach. Furthermore, intentional patient abuse destroys public respect in the delivery of governmental services."

Williams argues that because he handled prior attacks appropriately and was a good employee the penalty should not be removal. We "accord substantial deference to an agency head's choice of remedy or sanction . . . ." In re Herrmann, 192 N.J. 19, 34-35 (2007). "[P]rogressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position." Id. at 33. The question is "whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'"

A-2229-16T2

In re Carter, 191 N.J. at 484 (quoting In re Polk License Revocation, 90 N.J. 550, 578 (1982)).

The CSC found that Williams' conduct was deliberate. It had ample evidence to conclude that Williams' actions were not a reflexive response to an assault. There was nothing arbitrary, capricious or unreasonable in the CSC's decision. Williams also did not present any new evidence to the CSC for its reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2229-16T2