<div style="border:1px solid black">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4378-18T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KEITH LEWIS,

    Defendant-Respondent.

_____

Submitted October 10, 2019 – Decided November 7, 2019

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 08-12-0915.

Michael H. Robertson, Somerset County Prosecutor, attorney for appellant (Lauren R. Casale, Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from the March 8, 2019 Law Division order granting defendant's petition for post-conviction relief (PCR) following an evidentiary hearing, and the May 6, 2019 order denying its motion for reconsideration. We affirm.

We glean the following facts from the record. On December 17, 2008, a Somerset County grand jury returned a six-count indictment against defendant and a co-defendant. Defendant was charged with first-degree armed robbery, N.J.S.A. 2C:15-1 (count one); fourth-degree unlawful possession of an imitation firearm, N.J.S.A. 2C:39-4(e) (count two); second-degree eluding, N.J.S.A. 2C:29-2(b) (count five); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6) (count six). Only the co-defendant was named in counts three and four of the indictment, and defendant was also charged with numerous motor vehicle violations.

The charges stemmed from a robbery at a Radio Shack in North Plainfield at approximately 7:15 p.m. on November 19, 2008. After two partially masked men, one brandishing a gun, entered the store and demanded money from the store clerk, the store manager fled through the rear exit door and called the police. Following police pursuit of a vehicle occupied by two individuals, matching the description of the vehicle and the suspects provided by the store

manager, police apprehended defendant and the co-defendant after their vehicle crashed. The disabled vehicle, previously operated by defendant, contained items reported stolen from the Radio Shack. Additionally, defendant had the remnants of a partially torn, purple surgical-type latex glove on his wrist, similar to the gloves reportedly worn by the robbers, and a gun was found in the co-defendant's possession. The store clerk later identified defendant as one of the robbers, but confirmed he did not have the gun, and the store manager later identified the crashed vehicle as the vehicle the robbers used to flee the scene.

On the eve of trial, defendant entered a negotiated guilty plea to the charges. The plea was entered after a Wade[1] hearing was conducted, during which the trial court denied defendants' motion to exclude the store clerk's out-of-court show-up identification, and a Sands[2] hearing was conducted, during which the court rejected defendant's challenge to the application of the Persistent Offenders Accountability Act (Three Strikes Law), N.J.S.A. 2C:43-7.1. N.J.S.A. 2C:43-7.1(a) required a person convicted of robbery "who has been convicted of two or more [designated] crimes [including robbery] that were

_____

[1] United States v. Wade, 388 U.S. 218 (1967).

[2] State v. Sands, 76 N.J. 127 (1978).

committed on prior and separate occasions, regardless of the dates of the convictions," to be "sentenced to a term of life imprisonment . . . , with no eligibility for parole."[3]

Prior to sentencing, however, defendant, who was represented by a member of the Public Defender's office, filed a pro se motion to withdraw his guilty plea, arguing the Slater[4] factors and ineffective assistance of counsel (IAC). Despite defendant's assertion that his attorney's representation was ineffective, the trial court permitted defendant to represent himself with the attorney serving as standby counsel. On May 11, 2012, after denying the motion, the court sentenced defendant on count one in accordance with the plea agreement to a term of twenty years' imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

---

[3] Because defendant had been convicted of robbery in 1981 and 1982, and had last been released from confinement for an unrelated prior conviction within ten years of 2012, he qualified for sentencing under the Three Strikes Law. See N.J.S.A. 2C:43-7.1(a) and (c).

[4] State v. Slater, 198 N.J. 145, 157-58 (2009) (establishing four factors trial judges must "consider and balance . . . in evaluating motions to withdraw a guilty plea[,]" namely "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.").

On February 5, 2013, we heard defendant's challenge to his sentence and the denial of his motion to withdraw his guilty plea on the Excessive Sentence Oral Argument Calendar (SOA). See R. 2:9-11. Rejecting defendant's argument that the trial judge erred in denying his plea withdrawal motion, we affirmed the convictions and sentence. However, "with the State's consent," we remanded the matter to the trial court for the court to correct the Judgment of Conviction (JOC) by imposing "concurrent terms on counts [two, five and six], for which the court [had] neglected to impose sentences." The JOC was subsequently amended on February 20 and May 20, 2013, to reflect the imposition of an aggregate twenty-year sentence, subject to NERA.

On December 28, 2016, defendant filed a timely pro se PCR petition, asserting his trial and appellate attorneys were ineffective in a variety of ways. After applying the governing principles,[5] Judge Anthony F. Picheca, Jr. granted in part, and denied in part, defendant's request for an evidentiary hearing[6] in an

---

[5]  To prevail on an IAC claim, a defendant must satisfy a two-part test. Specifically, the defendant must show that his attorney's performance was deficient and that the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). See also State v. Fritz, 105 N.J. 42, 49-53 (1987) (adopting the Strickland two-part test for IAC claims).

[6]  "Although no PCR rule requires that evidentiary hearings be held on PCR petitions, Rule 3:22-10 recognizes that the PCR court may exercise its discretion

August 31, 2018 order. In the accompanying thirty-two page written statement of reasons, the judge rejected several of defendant's IAC claims and limited the hearing to the following issues: (1) whether trial counsel properly communicated with defendant, investigated the evidence, and prepared for trial; (2) whether trial counsel properly investigated mitigating factors, prepared for and represented defendant at sentencing; and (3) whether defendant was denied effective assistance of counsel in his pro se plea withdrawal motion.[7]

At the ensuing evidentiary hearing, defendant testified his attorney spoke to him a total of five times in the three years that he represented him, and that

to conduct evidentiary hearings at which oral testimony is taken." State v. Marshall, 148 N.J. 89, 157 (1997). "Post-conviction relief 'courts ordinarily should grant evidentiary hearings . . . if a defendant has presented a prima facie [case] in support of post-conviction relief.'" Id. at 158 (alteration in original) (quoting State v. Preciose, 129 N.J. 451, 462 (1992)). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Ibid. "Thus, in determining the propriety of an evidentiary hearing, the PCR court should ascertain whether the defendant would be entitled to post-conviction relief if the facts were viewed 'in the light most favorable to defendant.'" Ibid. (quoting Preciose, 129 N.J. at 462-63). "If that inquiry is answered affirmatively, then the defendant generally is entitled to an evidentiary hearing in order to prove the allegations." Ibid.

[7] As to this issue, the judge "believe[d] that based on the lack of clarity in the transcripts" regarding "whether [d]efendant actually proceeded pro se or with the assistance of trial counsel" and whether he was properly questioned "about exercising his right to proceed pro se," defendant "met his burden to warrant an evidentiary hearing" on the issue.

he sent twenty unanswered letters to him, asserting his innocence and expressing his dissatisfaction with the attorney's representation. According to defendant, other than the police report, he was never provided any discovery and was never shown any electronic discovery. Defendant testified he repeatedly asked his attorney to locate several potentially exculpatory witnesses, with whom he had spoken at the Radio Shack prior to the robbery, including the store manager, as well as supporting sales records, but was never informed of the results. Defendant testified he would not have pled guilty and would have insisted on going to trial if he had been properly represented.

During his testimony, the investigator assigned to defendant's case only recalled obtaining medical records to support a possible intoxication defense based on defendant's admission that he had smoked marijuana laced with PCP. However, upon receipt of the medical records, no further action was taken. The investigator did not recall interviewing any witnesses, trying to locate any potential witnesses, going to the scene, or taking any photographs.

Defendant's attorney testified that his custom and practice was to write a letter to the defendant indicating the receipt of all discovery, make photocopies of the discovery, and send copies to the defendant in jail. Additionally, he would ordinarily discuss the case with the client at each status conference and discuss

7

plea offers. However, there was no letter to defendant indicating the receipt of discovery and no written plea offer in the file. Moreover, the only communication he specifically recalled having with defendant was regarding the plea offer.

Defendant's attorney acknowledged his office's capability to conduct investigations, but confirmed he did not request any. During his representation of defendant, he did not interview any witnesses, visit the scene, or file any affirmative defenses. However, he negotiated for a twenty-year prison term, subject to NERA, which the State rejected,[8] joined in the co-defendant's <u>Wade</u> motion, which the judge denied, and unsuccessfully argued against the application of the Three Strikes Law at the <u>Sands</u> hearing.

He testified that in preparation for sentencing, ordinarily, he would send a presentence report to the client in jail, and discuss the report at the sentencing hearing. However, in defendant's case, he could not recall whether he argued any mitigating factors from the presentence report at sentencing. He also testified that when a client communicates his dissatisfaction with the attorney's

---

[8] Under the terms of the plea agreement defendant ultimately accepted, the State's sentencing recommendation was an aggregate twenty-five year term of imprisonment, subject to NERA. The aggregate twenty-year prison term subject to NERA ultimately imposed resulted from a sentencing decision by the court.

representation, ordinarily, a "pool form" would be filled out to determine whether a pool attorney would take over the representation. However, a pool form was not completed in defendant's case.

Following the hearing, in a March 8, 2019 order, Judge Picheca granted defendant's PCR petition, vacated his guilty plea, and set the matter down for trial. In his accompanying written statement of reasons, the judge concluded defendant "met his burden [of proving] ineffective-assistance-of-counsel under Strickland and Fritz" in connection with "trial counsel's deficient performance prior to [defendant] entering the guilty plea." The judge also determined that counsel's deficient performance "prejudiced" defendant.[9]

First, addressing defendant's argument that his attorney failed to prepare and investigate the case in preparation for trial, the judge stated:

> [T]he [c]ourt has reviewed the numerous letters sent by [defendant] to [his attorney] indicating his dissatisfaction with counsel's representations. No response was documented in [the attorney's] file. This is consistent with [defendant's] testimony that he only spoke with his attorney five times over the course of the three years of his representation. Communicating with

---

[9] On the other hand, the judge rejected defendant's IAC claim in connection with trial counsel's purported failure to prepare and investigate mitigating evidence for defendant's sentencing. The judge explained defendant did "not argue what mitigating factors could have been found, who would have spoken on his behalf, or how finding mitigating factors would have changed the results of sentencing" in order "to establish the prejudice prong of Strickland[.]"

one's client is the most basic task of defense counsel and failing to do so renders an attorney's performance less than that which is required by the Sixth Amendment. [Defendant] also requested . . . his attorney to locate potential exculpatory witnesses, including [the store manager], and there was no evidence that this attempt ever occurred. [The investigator] testified that he did not recall interviewing any witnesses, nor try[ing] to locate any potential witnesses. Three years is ample time to engage in attempts to locate potential exculpatory witnesses. Conducting an investigation into potentially exculpatory witnesses is also a basic task of defense counsel and the failure to do so renders counsel's performance less than the counsel as guaranteed by the Constitution. The [c]ourt briefly notes that trial counsel did obtain medical records of [defendant] after he gave information potentially supporting an intoxication defense. However, this does not negate the fact that trial counsel failed to communicate with his client, failed to review the evidence with his client, and failed to attempt to locate exculpatory witnesses. Therefore, an adequate investigation was not undertaken in this case.

In evaluating the credibility of the witnesses' testimony, the judge explained:

> Although [defendant's attorney] testified as to his general custom and practice, there is no evidence indicating that those general procedures took place in this case. There was no letter indicating that [defendant] was sent a copy of discovery, and [defendant] asserts that he never received discovery. [His attorney] submits that he does not remember many facts of this case and was unable to confirm whether discovery was sent and to what extent he prepared for

10

this case. Therefore, there is no evidence indicating that [defendant's] claims are incorrect and no evidence to indicate that trial counsel conducted any investigation into this case other than retrieving medical records. Even though trial counsel joined the <u>Wade</u> motion filed by codefendant's counsel, and argued a <u>Sands</u> issue, this does not evidence that any investigation took place.

The judge concluded:

This [c]ourt is primarily concerned with counsel's lack of communication with his client and his failures to attempt to locate potential witnesses. The State is correct in its assertion that decisions made after a thorough investigation are presumed to be strategic, however, a thorough investigation did not occur in this case. Therefore, this [c]ourt will not presume that trial counsel's decisions were strategic. The [c]ourt finds that trial counsel's actions, specifically his failure to communicate with [defendant] and to review discovery with [defendant], as well as his failure to attempt to locate potential witnesses, falls below the basic proficiency as afforded by the Sixth Amendment. [Defendant] has met his burden under the performance prong of <u>Strickland</u> on this ground.

<u>See</u> <u>State v. Porter</u>, 216 N.J. 343, 352 (2013) ("An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation."). <u>See also</u> <u>State v. Chew</u>, 179 N.J. 186, 217 (2004) ("'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary[,]'" and "'[a] failure to do so

will render the lawyer's performance deficient.'" (first quoting Strickland, 466 U.S. at 691, then quoting State v. Savage, 120 N.J. 594, 618 (1990))).

Turning to the prejudice prong of Strickland, the judge explained:

> [Defendant] pled guilty on the day trial was set to commence. [Defendant] testified that he felt pressured to plead guilty, in part based upon counsel's deficient investigation. Trial counsel was unprepared to try his case and [defendant] faced a potential sentence of life imprisonment. Because trial counsel was unprepared on the day trial was set to begin, [defendant] pled guilty. If counsel had properly prepared, [defendant] would have insisted on proceeding with the trial.[10] The [c]ourt finds that [defendant] was prejudiced by trial counsel's deficient performance.

See Preciose, 129 N.J. at 464 (finding "plausible and less speculative than other types of counsel errors" defendant's assertions "that the patently-inadequate preparation of both attorneys and the substitute attorney's incorrect advice regarding his possible sentence, combined with the last-minute substitution of attorneys, pressured him into pleading guilty.").

---

[10] To establish a prima facie case of IAC to set aside a guilty plea, the second Strickland prong is modified to require "'a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. Nunez-Valdez, 200 N.J. 129, 142 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). See also Hill v. Lockhart, 474 U.S. 52, 59 (1985). In other words, the defendant must show that not pleading guilty would have been "rational under the circumstances." State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

A-4378-18T2

The judge also determined that defendant "was completely denied counsel" in connection with his pro se plea withdrawal motion, and therefore "prejudice [was] presumed." Thus, according to the judge, defendant "clearly establishe[d] [both] the performance" and "the prejudice prong of the Strickland test." In that regard, the judge noted defendant was not afforded a hearing under Faretta v. California, 422 U.S. 806 (1975), which allows a defendant to exercise his constitutional right to "self-representation," only when the defendant is "made aware of the dangers and disadvantages of self-representation" and "'knowingly and intelligently'" elects to "manage[] his own defense" with "eyes open." Id. at 835 (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)).

The judge explained:

> [Defendant] testified that he did not wish to proceed pro se, however, he was arguing an ineffective-assistance-of-counsel claim that inevitably created a conflict of interest between himself and trial counsel. For that reason, trial counsel correctly recused himself from arguing the motion and [defendant] was required to proceed pro se. No Faretta hearing was conducted and [defendant] was not questioned on either his ability or his desire to proceed without counsel. At oral argument, [defendant] repeatedly asserted that he did not wish to proceed pro se, but he was ultimately required to do so. [Defendant] should have been questioned on this and afforded the opportunity to be assigned new counsel to argue the motion. A form to request a pool attorney was never filled out for [defendant], thus, he was never afforded the

13

opportunity to seek alternative representation. Under the Strickland ineffective-assistance-of-counsel analysis, [defendant] was completely denied the right to counsel which clearly establishes the performance prong of the Strickland test. Prejudice may be presumed in such a situation, therefore establishing the prejudice prong of the Strickland test.

The judge also rejected the State's contention "that this issue was previously adjudicated on appeal" and therefore "procedurally barred[,]" noting "[t]he Appellate Division specifically limited its affirmance to 'defendant's motion to withdraw his guilty plea under [Slater].'" Further, according to the judge, "[a]lthough [defendant] indicated in [his plea withdrawal] motion his dissatisfaction with trial counsel," defendant "had not, at that time, filed a motion for post-conviction relief based on ineffective-assistance and the trial court specifically stated that it would not adjudicate that issue."

Thereafter, the State moved for reconsideration, which was denied by Judge Picheca in a May 6, 2019 order. In the accompanying written decision, quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), the judge explained that "[r]econsideration should be utilized" only where "the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or "did not consider, or failed to appreciate the significance of probative, competent evidence[,]" neither of which applied here. Focusing on counsel's

14

performance prior to defendant pleading guilty, the judge reiterated that "trial counsel's performance fell below the basic proficiency as required by the Sixth Amendment because he failed to adequately investigate th[e] case or prepare for trial." The judge expressly rejected the State's renewed contention that defendant failed to establish prejudice resulting from his attorney's deficient performance, reasoning that the "[c]ourt found [defendant's] assertion" "that had counsel adequately investigated and prepared, he would have insisted on going to trial" "to be credible in light of all of the relevant evidence."

To support its contention that reconsideration was warranted because the judge applied the incorrect legal standard to satisfy the prejudice requirement, the State relied on Hill, 474 U.S. at 59, where the Court explained

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.
>
> [Ibid.]

In rejecting the State's reliance on Hill, the judge reasoned:

[T]his test assumes that there is guesswork involved with determining whether a defendant would have exercised his right to proceed to trial under a particular set of circumstances. . . . Here, . . . the [c]ourt found that [defendant] would have proceeded to trial if counsel was prepared and investigated [the case]. . . .

. . . .

[Defendant] asserted that had trial counsel adequately prepared, investigated, and called certain witnesses to testify so that [defendant] could present the defense that he did not form the requisite mental state to carry out the robbery, he would have proceeded to trial. . . . [Defendant] argues that had trial counsel been prepared to examine [the store manager] and [the store clerk] at trial, they would have produced testimony that indicated [defendant] was present in the [Radio Shack] prior to the robbery and that his actions were inconsistent with one about to commit a robbery. [Defendant] repeatedly asserted that he arrived at the [Radio Shack] with the intent to commit a shoplifting, and was unaware that the codefendant was planning an armed robbery. . . . [Defendant] argues that his earlier presence in the [Radio Shack] would have explained why [the store clerk] identified [defendant] in the show-up identification procedure. . . . The State did have evidence against [defendant], including that he was found in the vehicle with the codefendant, [the store clerk] identified him in a show-up identification procedure, and the co-defendant was found with a handgun. . . . Despite the evidence against him, [defendant] firmly asserted his innocence and desired to proceed to trial with the above-described defense. Only when he realized that trial counsel was unprepared to present that defense did he decide to plead guilty.

16

On appeal, the State reiterates its argument that the judge's "analysis [of the prejudice prong] was wrong as a matter of law" because defendant failed to meet "his burden to prove he was prejudiced by his counsel's actions or inactions." The State asserts "[d]efendant cannot hope to meet the burden to show that for[e]going a plea limiting his exposure to . . . twenty years . . . rather than exposing himself to a mandatory life term without parole by going to trial would have been the rational decision" given the "[overwhelming] evidence of his guilt." Further, according to the State, "no showing [was] made at the PCR hearing that any evidence existed which would have come from any sort of investigation" sufficient to "undermine[]" or "compromise[] the State's crushing evidence" in order to make "the trial option . . . the rational choice." Thus, again relying on Hill, the State contends the judge "wrongly focused exclusively on defendant's supposed insistence on going to trial, without taking into account any consideration that no new evidence was produced on PCR that would have had any impact on the State's overwhelming evidence."[11]

_____

[11] As to Judge Picheca's decision "that the trial court failed to safeguard defendant's right to unfettered counsel" at defendant's plea withdrawal motion, the State urges the proper "remedy is not a new trial" but "to conduct a new Slater hearing . . . with unfettered counsel" in accordance with State v. Hayes, 205 N.J. 522 (2011). In denying the reconsideration motion, Judge Picheca agreed that the State's proposed remedy would have been appropriate had that

"In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard[.]" State v. Pierre, 223 N.J. 560, 576 (2015). Thus, we "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013) (citing State v. Harris, 181 N.J. 391, 415 (2004)). A "PCR court's interpretation of the law[,]" however, is afforded no deference, and is "reviewed de novo." Id. at 540-41 (citing Harris, 181 N.J. at 415-16). "[F]or mixed questions of law and fact," we "give deference . . . to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." Harris, 181 N.J. at 416 (citing Marshall, 148 N.J. at 185).

On a motion for reconsideration, "[r]econsideration itself is 'a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice.'" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria, 242 N.J. Super. at 401). "Reconsideration is not to be granted lightly and the grounds for reconsideration are generally limited[,]" to

been the sole basis for the court's determination. However, as the judge pointed out "not only did [the judge] find that [defendant] was denied the right to counsel at the motion to withdraw his guilty plea, but also that he was denied the right to effective assistance of counsel during the investigatory phase of the case."

"correct[ing] a court's error or oversight." State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015). We review the denial of a motion for reconsideration for an abuse of discretion, Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996), which "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Applying these standards, we conclude Judge Picheca's factual findings are supported by sufficient credible evidence in the record, and his application of the law governing PCR proceedings is sound. Thus, we affirm substantially for the reasons expressed in the judge's three thoughtful and thorough written decisions. We add only that in order to establish the Strickland prejudice prong to set aside a guilty plea, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla, 559 U.S. at 372). That determination should be "based on evidence, not speculation[,]" and "may hinge in large part on

defendant's credibility and that of any other witnesses he presents at the evidentiary hearing." Id. at 486-87.

Here, the judge was so convinced based on his credibility assessments, to which we apply a deferential standard of review. As the judge noted in denying the reconsideration motion,

> this [c]ourt found [defendant's] testimony that he would have insisted on proceeding to trial to be credible. [Defendant] consistently asserted his innocence as evidenced by the substance of his letters, testimony from both trial counsel and [defendant] at the evidentiary hearing, and his repeated insistence on going to trial. Trial was set to begin, and on the day of trial, only after realizing how unprepared trial counsel was, did [defendant] decide to plead guilty. He soon afterwards filed the motion to withdraw his guilty plea.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4378-18T2