**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2905-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYRONE K. ELLISON,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 19, 2025**
>
> **APPELLATE DIVISION**

Argued March 18, 2025 – Decided August 19, 2025

Before Judges Firko, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 21-09-0693.

Jack L. Weinberg, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Jack L. Weinberg, on the briefs).

Michelle Ghali, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Michelle Ghali, on the brief).

The opinion of the court was delivered by

AUGOSTINI, J.S.C. (temporarily assigned)

Following a seven-day jury trial, defendant Tyrone K. Ellison was convicted of first-degree kidnapping (count one), N.J.S.A. 2C:13-1(b)(2); third-degree aggravated criminal sexual contact (count two), N.J.S.A. 2C:14-3(a); second-degree possession with intent to distribute a controlled dangerous substance (CDS) (count six), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2); third-degree possession of CDS (count seven), N.J.S.A. 2C:35-10(a)(1); and the lesser-included offense of simple assault, N.J.S.A. 2C:12-1(a)(1).

Defendant appeals from his convictions and sentence arguing the trial court erred in: (1) denying defendant's motion for reconsideration of the suppression motion; (2) denying defendant's motion to sever counts six and seven from counts one through five and depriving defendant of a fair trial by not giving a curative instruction on these alleged disparate charges; and (3) imposing a discretionary extended term sentence under these circumstances, which defendant contends "shocks the judicial conscience."

This appeal raises a novel issue regarding whether an officer's observation of defendant's entry of his passcode into his cell phone violates defendant's right to privacy and Fifth Amendment right against self-incrimination. We hold that defendant had no reasonable expectation of privacy and there was no violation of defendant's Fifth Amendment right against self-incrimination where

defendant voluntarily requested his cell phone, was not compelled to provide the passcode and voluntarily entered the passcode in the officer's presence. We affirm defendant's convictions.

Because defendant was sentenced as a persistent offender pursuant to N.J.S.A. 2C:44-3(a) on the kidnapping conviction to sixty-years' imprisonment, however, we vacate his discretionary extended term sentence in accordance with Erlinger v. United States and State v. Carlton[1] to have a jury determine whether defendant is eligible for enhanced punishment as a persistent offender. 602 U.S. 821, 833 (2024); 480 N.J. Super. 311, 355 (App. Div. 2024). We remand for further proceedings in accordance with this opinion.

I.

We summarize the facts presented from the motion record and the evidence presented at trial. On February 11, 2021, the victim, R.B.,[2] sought treatment for his substance abuse addiction and traveled to a rehabilitation program in Marlboro. He arrived late to the program and could not be admitted that day. R.B. then took a train to Newark, planning to return to his home in

---

[1] The New Jersey Supreme Court granted certification on May 16, 2025. State v. Carlton, 260 N.J. 478 (2025).

[2] We use initials to protect the confidentiality of the victims. R. 1:38-3(c)(12).

Camden County, but missed his connecting train. Stranded in Newark and carrying his belongings, R.B. met someone to "score a little" methamphetamine.

Unable to find a warm place to stay that evening, he was "curled up . . . shaking to the point where [he] [could not] talk" and "freezing to death" by the next morning. R.B. was taken by ambulance to the hospital, treated for hypothermia, and later released.

After R.B. was discharged from the hospital, defendant pulled up in his car and offered R.B. a warm place to stay and a ride to the train station. During the ride, defendant offered R.B. something to help him relax, which R.B. understood to mean drugs. Initially, R.B. believed defendant was going to help him.

Defendant drove R.B. to his apartment in Morristown. After arriving at defendant's home, R.B. fell asleep. He then awoke to defendant touching his penis. R.B. pushed defendant off him, telling him this was not why he was there and not what he was like. Stunned by defendant's behavior, R.B. tried to charge his cell phone to contact his mother. When R.B. attempted to turn on the cell phone, defendant "[ran] over, grabbed it out of [R.B.'s] hand," and told him to let it charge. R.B. saw defendant pull out a gun and put it on top of a nearby speaker.

A-2905-22

At some point, defendant forced R.B. to leave the apartment with him and took him for a drive. While in the car with defendant, R.B. did not know where his cell phone was and believed that defendant had the gun in his possession.

After returning to defendant's apartment, defendant pushed and grabbed R.B., forcibly pulling him back into the apartment. R.B. described that, once back inside, he could not "go anywhere or touch anything without [defendant] being directly next to [him]." Defendant had possession of R.B.'s phone and refused to return it or allow R.B. to make a call.

Defendant was experiencing problems with his landlord, which he discussed with R.B. While reviewing documents related to defendant's dispute—an action R.B. described as an attempt to "befriend [defendant] kind of" in an effort to stay safe—defendant approached R.B. from behind and began massaging his back. R.B. repeatedly told defendant to stop, but defendant continued and "quickly started working his way down" R.B.'s body. As R.B. stood up and pushed defendant off him, defendant hit R.B. in the face, "bust[ing] [his] tooth in." R.B. explained:

> I don't know if he thought maybe I was running out[—
> ] if I was going to run out at that point or what, but
> he[—] . . . had the [—] he immediately grabbed [—]
> um, well, grabbed his gun and he hit me with that.

A-2905-22

R.B. bled profusely, and defendant insisted R.B. take a shower and put on clothes defendant gave him. After showering, defendant started to touch R.B. in a sexual manner again against his will. R.B. explained that defendant performed fellatio on him.

R.B. complained about pain in his mouth. Defendant offered to give him something for the pain, went into a closet near defendant's bedroom where he stored drugs, and returned with heroin. R.B. then used the heroin.

During this time, R.B.'s mother had been constantly calling and texting R.B. out of concern for his safety. At one point, on February 14, 2021, R.B. was able to text his mother the address where he was being held, warning her, "[d]on't text me back, he can't know[,]" and "[d]on't come alone." R.B.'s mother drove to the address, and upon arriving, texted R.B., "[h]ere." R.B. ultimately fled the apartment, running to the parking lot where his mother was waiting for him. His mother immediately drove off to a place of safety.

The next day, R.B.'s mother drove R.B. to the police station where he gave a statement. On February 16, 2021, a search warrant was issued for defendant, his apartment, and his car. That warrant was executed on February 19, 2021.[3]

_____

[3] Following oral argument, on April 3, 2025, we granted the State's motion to supplement the record with the March 3, 2021 communications data warrant

The search produced drug distribution paraphernalia, suspected CDS, and multiple cell phones; specifically, two cell phones were recovered from defendant's person, and one cell phone was recovered from defendant's car.

That same day, defendant was arrested and taken into custody. While being processed in the police station, defendant requested his cell phone to retrieve some phone numbers. In his supplemental report, Detective Scott Weaver stated he handed defendant his cell phone and "stood by as he entered his passcode." Detective Weaver explained that he retained the passcode in his memory and later wrote it down. He subsequently provided the passcode to the Morris County Prosecutor's Office High Tech Crimes Unit.

On March 3, 2021, a CDW was issued authorizing the search of thirty-two cell phones seized as a result of the first search warrant. The CDW included the cell phone seized from defendant's person, for which Detective Weaver observed defendant entering his passcode while in custody. Multiple narcotics-related text message conversations were found, some of which were identified and read to the jury by Detective Weaver.

---

(CDW) and the February 17, 2021 search warrant, which permitted, in relevant part, the search and seizure of any "cellular or mobile telephone devices and/or electronic devices [] in the custody or control of [defendant]."

A-2905-22

On October 16, 2021, a Morris County grand jury indicted defendant on ten counts under Indictment No. 21-09-00693-I: first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2) (count one); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count two); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (counts three and ten); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (counts four and eight); third-degree criminal coercion, N.J.S.A. 2C:13-5(a)(1) (counts five and nine); second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2) (count six); and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count seven).

The trial court addressed several pre-trial motions. Relevant to this appeal are defendant's motion to suppress items seized from the February 16, 2021 search warrant and a motion to sever counts six and seven of the indictment "charging the separate crimes of possession and possession with intent to distribute CDS." The trial court denied both motions. On October 24, 2022, the trial court granted the State's motion to dismiss counts four, five, eight, nine, and ten of the indictment.

On the eve of trial, Detective Weaver submitted a supplemental report dated October 21, 2022, recalling that he obtained defendant's passcode by

observing defendant enter it into the cell phone while being processed at police headquarters. Detective Weaver passed this information onto the High Tech Crimes Unit. Based on this new information, on May 2, 2022, defendant filed a motion for reconsideration of the suppression order.

On October 31, 2022, the court denied defendant's motion for reconsideration of the suppression order, reasoning that the foregone conclusion exception to the Fifth Amendment would have justified compelling the passcode to defendant's cell phone, and the State had lawful authority to search the phone.

On November 14, 2022, after a seven-day trial, the jury returned guilty verdicts on the kidnapping, criminal sexual contact, possession with intent to distribute CDS, and possession of CDS charges. The jury returned a verdict of not guilty on the aggravated assault charge but found defendant guilty on the lesser-included offense of simple assault.

On April 14, 2023, the trial court granted the State's motion for a discretionary extended term and sentenced defendant as a persistent offender on the kidnapping conviction. The trial court imposed the following sentence:

> count one: sixty-years' imprisonment, with an eighty-five percent parole ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2;

A-2905-22

count two: five-years imprisonment to run concurrently to count one and defendant to be subject to Megan's Law pursuant to N.J.S.A. 2C:43-6.4; and

count six: nine-years imprisonment consecutive to count one. The trial court merged count three into count one and count seven into count six.

On appeal, defendant raises three issues for our consideration:

POINT I: THE [TRIAL] COURT ERRED WHEN IT DENIED [] DEFENDANT'S MOTION FOR RECONSIDERATION OF THE SUPPRESSION HEARING. THE CASE IS NOT ABOUT [] DEFENDANT'S PASSCODE TO THE CELL PHONES PER SE BUT RATHER ABOUT THE SURREPTITIOUS MANNER IN WHICH DET[ECTIVE] WEAVER OBTAINED THE PASSCODE.

POINT II: THE [TRIAL] COURT ABUSED ITS DISCRETION WHEN IT DENIED [] DEFENDANT'S MOTION TO SEVER COUNTS SIX [AND] SEVEN FROM COUNTS ONE THROUGH FIVE. THE [TRIAL] COURT FURTHER DEPRIVED [] DEFENDANT OF A FAIR TRIAL WHEN IT DID NOT ISSUE A CURATIVE OR LIMITING INSTRUCTION ON HOW TO CONSIDER THESE DISPARATE AND UNRELATED CHARGES.

POINT III: THE [TRIAL] COURT ABUSED ITS DISCRETION IN IMPOSING A DISCRETIONARY EXTENDED TERM SENTENCE UNDER THE CIRCUMSTANCES OF THIS CASE. THE SENTENCE IMPOSED SHOCKS THE JUDICIAL CONSCI[ENCE].

II.

"When reviewing a trial court's decision on a motion to suppress . . . appellate courts generally defer to the fact-findings of the trial court when they are supported by sufficient credible evidence in the record." State v. Puryear, 441 N.J. Super. 280, 292 (App. Div. 2015). Therefore, "[o]ur review of a trial [court's] decision on a motion to suppress is limited." State v. Gomez, 481 N.J. Super. 109, 121 (App. Div. 2025) (citing State v. Ahmad, 246 N.J. 592, 609 (2021)). Although we defer to the trial court's fact-findings, "the consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). Rather, we review the trial court's legal interpretation derived from those facts de novo. Ibid. (citing State v. Radel, 249 N.J. 469, 493 (2022)).

We "will not disturb the trial court's reconsideration decision, 'unless it represents a clear abuse of discretion.'" Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). Moreover, "[t]he court has the discretion and right to reconsider an interlocutory ruling at any time before the entry of final judgment in 'the sound discretion of the [] court to be exercised in the interests of justice.'" Puryear,

441 N.J. Super. at 293 (alteration in original) (quoting State v. Timmendequas, 161 N.J. 515, 554 (1999)) (internal quotation marks omitted).

A.  Motion for Reconsideration of Order Denying Suppression Motion.

Defendant contends the trial court erred by denying reconsideration of the suppression motion after the submission of Detective Weaver's "belated" supplemental report, explaining "how he surreptitiously obtained the passcode to [] defendant's cell phone . . . ."  Defendant argues that the trial court's reliance on the foregone conclusion exception to the Fifth Amendment was misplaced. Instead, the trial court should have conducted an analysis to determine whether, under these circumstances, the way the passcode was obtained passed constitutional muster.

Our Supreme Court in State v. Andrews extended the foregone conclusion exception under the Fifth Amendment, historically applied to documents, to passcodes for passcode-protected cell phones.  243 N.J. 447, 479 (2020).  The Court held, therefore, that "although the act of producing the passcodes is presumptively protected by the Fifth Amendment," its "constitutional protection may be overcome if the passcodes' existence, possession, and authentication are foregone conclusions."  Ibid.  In other words, "[f]or purposes of the Fifth Amendment privilege against self-incrimination," the act of producing a

A-2905-22

passcode can be compelled if the State "can demonstrate it already knows the information that act will reveal—if, in other words, the existence of the requested passcodes, their authenticity, and [] defendant's possession of and control over them—are a "foregone conclusion" Id. at 471.

Here, the record reveals the trial court reconsidered its prior interlocutory ruling based on the new information contained in Detective Weaver's supplemental report. Because this information was not available when the trial court addressed the motion in May 2022, the court "engage[d] in the analysis of . . . defendant's [a]pplication." However, after reviewing the new information, the trial court denied reconsideration and found that the foregone conclusion exception would have compelled production of the passcode.

We hold that, based on settled legal principles, the trial court did not err in denying reconsideration for two reasons: (1) there was no reasonable expectation of privacy when defendant entered his passcode in the officer's presence; and (2) the doctrine of inevitable discovery and the foregone conclusion exception support the trial court's denial of reconsideration of the suppression order.

"The Fifth Amendment to the United States Constitution provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against

himself.'" Andrews, 243 N.J. at 465 (omission and alteration in original) (quoting U.S. Const. amend. V). The undergirding of the privilege against self-incrimination is "a privacy rationale that prevents 'the invasion of [one's] indefeasible right of personal security, personal liberty and private property.'" Id. at 488 (LaVecchia, J., dissenting) (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)). "[T]he Fifth Amendment 'respects a private inner sanctum of individual feeling and thought' . . . that necessarily includes an individual's papers and effects to the extent that the privilege bars their compulsory production . . . ." Id. at 488-89 (LaVecchia, J., dissenting) (quoting Couch v. United States, 409 U.S. 322, 327 (1973)).

Although "[t]he New Jersey Constitution does not contain a privilege against self-incrimination," we have "long recognized the privilege under the common law." State v. Andrews, 457 N.J. Super. 14, 30-31 (App. Div. 2018). Additionally, "[t]he Legislature [has] codified the protection against compelled self-incrimination" in N.J.S.A. 2A:84A-18 and -19, albeit with "limitations on that right." Andrews, 243 N.J. at 482 (quoting In re Grand Jury Procs. of Guarino, 104 N.J. 218, 229 n.6 (1986)).

In fact, "[o]ur state-law privilege against self-incrimination offers broader protection than its federal counterpart under the Fifth Amendment." State v.

Muhammad, 182 N.J. 551, 568 (2005). For example, unlike federal law, New Jersey prohibits a prosecutor from using "at trial a defendant's silence when that silence arises 'at or near' the time of arrest, during official interrogation, or while in police custody." Id. at 569.

"Testimonial communications" for purposes of a Fifth Amendment analysis "may take any form." Andrews, 243 N.J. at 465 (citing Schmerber v. California, 384 U.S. 757, 763-64 (1966)). Further, a compelled act of disclosure by a state actor may trigger the Fifth Amendment privilege against self-incrimination. Id. at 467 (citing Doe v. United States (Doe II), 487 U.S. 201, 211 (1988)). However, "[e]ven when a communication is testimonial, there is an exception to the Fifth Amendment which arises when the act of production has minimal testimonial value, because the information conveyed by the act is a foregone conclusion." State v. C.J.L., 471 N.J. Super. 477, 484 (App. Div. 2022) (citing Andrews, 243 N.J. at 480).

Here, defendant contends that because he was "in custody" when he requested his cell phone to retrieve phone numbers, the use of the passcode was an "improper use," analogous to the improper use of a defendant's silence, and amounted to an unreasonable invasion of his privacy. These arguments are

A-2905-22

unpersuasive because defendant voluntarily requested access to his cell phone and voluntarily entered his passcode in front of Detective Weaver.

B. Right to Privacy.

We recognize that defendant's custodial status in the police station "did not strip him of all constitutional protections." State v. McQueen, 248 N.J. 26, 32 (2021). However, "[f]ew would dispute that an arrestee has a lesser expectation of privacy within the confines of a police station." Id. at 44. "Andrews . . . addressed the relationship between Fourth Amendment privacy concerns and self-incrimination principles[,]" and "the Court determined 'the proper focus'" in evaluating a motion to compel passcodes "was [that] 'Fifth Amendment[,] and . . . Fourth Amendment[] privacy protections' [do] not factor into [the] analysis." C.J.L., 471 N.J. Super. at 485 (first, second, and fourth alterations in original) (second omission in original) (quoting Andrews, 243 N.J. at 465, 479-80).

In McQueen, defendant's phone conversation made from police headquarters in the detective's presence was suppressed, because the Court held "an arrestee has a reasonable expectation of privacy in a call made from a police station in the absence of notice that the conversation may be monitored or recorded." 248 N.J. at 49. The Court noted that defendant was not advised his

16

call would be recorded, nor were there warning signs that calls were recorded. Id. at 49-50. Moreover, the Court underscored, "[n]o one stood over McQueen to listen to the conversation." Id. at 33. The Court rejected the argument that "the surreptitious recording" of the conversation "falls within the ambit of the so-called 'plain hearing' exception to the warrant requirement." Id. at 47. However, the Court acknowledged that "if a defendant speaks loudly enough to be overheard his expectation of privacy vanishes . . . ." Ibid. (quoting State v. Constantino, 254 N.J. Super. 259, 265 (Law Div. 1991)) (internal quotation marks omitted).

Here, defendant was in custody and undergoing processing when he voluntarily requested his cell phone. It is also undisputed that defendant's cell phone was already in police custody, lawfully seized pursuant to a search warrant issued on February 16, 2021—the sufficiency of which defendant does not challenge on appeal. The contents of the phone were later accessed under a lawfully issued CDW on March 3, 2021. Importantly, defendant was not compelled to provide his passcode during the booking process.

In contrast to McQueen, defendant knew Detective Weaver was present when he entered his passcode. Defendant does not assert that he attempted to conceal the passcode, or that any effort to do so was thwarted by the detective.

There was no deception or trickery used to obtain defendant's passcode. Nor did the police orchestrate the situation to induce defendant to reveal the passcode. Instead, defendant voluntarily requested Detective Weaver's assistance in retrieving information from the phone.

Moreover, because the cell phone was in police custody, it would have been unreasonable for Detective Weaver to allow defendant to use the seized phone without close monitoring to prevent defendant from, for example, deleting stored information. "An individual [who voluntarily] surrenders a reasonable expectation of privacy to information" that he or she reveals to a third-party has little basis to seek constitutional refuge. State v. Evers, 175 N.J. 355, 369 (2003) (citing United States v. Miller, 425 U.S. 435, 443 (1976)).

Analogous to the "so-called 'plain hearing' exception" referenced in McQueen, if a defendant enters a passcode in a phone in the presence of law enforcement, defendant's "expectation of privacy vanishes." 248 N.J. at 47 (quoting Constantino, 254 N.J. Super. at 265.)

We agree with the State that this situation is analogous to analyzing evidence discovered under the plain-view exception to the warrant requirement. "The whole notion of the plain-view doctrine is that, [when lawfully in a location], the officer does not have to secure a separate warrant from a judge to

confirm what he has seen with his own eyes." State v. Gonzales, 227 N.J. 77, 100 (2016). We also recognize this analysis requires us to consider the interplay between the Fourth and Fifth Amendment protections. As we recently reinforced, "we do not view the various rights accorded to criminal suspects as being kept in separate silos meted out one at a time and in isolation from each other. Instead, we view these rights as threads that form an intricately-woven tapestry . . . ." State v. Amang, 481 N.J. Super. 355, 368 (App. Div. 2025).

If the officer naturally observes the code, the officer "acts within the permissible confines of the Federal and State Constitutions" by retaining that passcode and using it to access the contents of the phone once a valid CDW issues. McQueen, 248 N.J. at 47. Therefore, we hold that defendant had no reasonable expectation of privacy when he voluntarily entered his passcode into his cell phone while in police custody and in the presence of law enforcement.

C. Inevitable Discovery and the Foregone Conclusion Exception.

Defendant next argues the trial court erred in applying the foregone conclusion exception to the Fifth Amendment because it sanctioned the "manner" in which Detective Weaver gained access to defendant's passcode. Defendant argues the trial court "allowed the State to conduct a fishing expedition resulting in information for which it did not know existed and crimes

for which it did not know had occurred."  Defendant further contends this is not the type of information the foregone conclusion exception was intended to authorize.

The defendant in Andrews was arrested and his cell phone lawfully seized; however, the State could not access the contents of the phone and sought an order compelling defendant to disclose his passcodes, which defendant opposed. Unlike Andrews, defendant was not compelled to produce the passcodes to his cell phone.  Had Detective Weaver not observed and retained defendant's passcode, as the trial court correctly pointed out, the State would have been able to obtain an order compelling the production of the passcode pursuant to the foregone conclusion exception.

Applying the criteria of the foregone conclusion exception, the trial court reasoned that Detective Weaver's "observation[] provided the State with the information that the passcodes existed, that [] defendant certainly possessed his phone, and he knew how to operate the passcode protected device, and by [] defendant accessing his phone, . . . and retrieving family . . . phone numbers, the passcode enabled access to the cell phones['] contents."  Defendant conceded that had Detective Weaver not observed defendant voluntarily putting his passcode into his phone when the CDW was issued on March 3, 2021, "it's likely

that a [court] would have said, based on all the facts and circumstances, based on the totality[of the circumstances]" the State would have satisfied the elements of the foregone conclusion exception and issued an order pursuant to Andrews.

The inevitable discovery doctrine may be invoked to preserve "the admissibility of evidence obtained without a warrant or a valid exception to the warrant requirement."  State v. Camey, 239 N.J. 282, 301 (2019).  When "the evidence in question would inevitably have been discovered without reference to the police error or misconduct," thereby negating any taint, the inevitable discovery doctrine allows for its admissibility.  State v. Sugar, 108 N.J. 151, 156 (1987) (quoting Nix v. Williams, 467 U.S. 431, 448 (1984)); accord State v. Maltese, 222 N.J. 525, 551-52 (2015).  To apply the exception, the State must prove the following by clear and convincing evidence:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Maltese, 222 N.J. at 552 (quoting State v. Johnson, 120 N.J. 263, 284 (1990)).]

A-2905-22

The undisputed facts in the record establish each of these criteria. First, a valid search warrant for defendant's car, apartment, and person had been issued and executed. Thereafter, a valid CDW was issued permitting access to the contents of defendant's cell phones. Under Andrews, the elements of the foregone conclusion exception would have been independently established, thereby compelling defendant to provide his passcode. Once the passcode was compelled, law enforcement would have been able to access the contents of the phone.

Finally, defendant asserts the manner in which Detective Weaver "surreptitiously" obtained defendant's passcode, "without first seeking judicial authorization," is involuntary as a matter of law and requires reversal of defendant's convictions. There is no support for this broad assertion. The Court's holding in Andrews—a defendant may be compelled to produce his or her passcode "if the passcode[']s[] existence, possession, and authentication are foregone conclusions"—does not preclude a defendant's voluntary disclosure of his passcodes. Andrews, 243 N.J. at 480. To hold otherwise expands Andrews beyond the limits of the Court's holding and would be inconsistent with our Fourth and Fifth Amendment jurisprudence.

A-2905-22

In sum, we hold that defendant had no reasonable expectation of privacy when he voluntarily put his passcode into his cell phone while in police custody and in front of the police officer. Further, the State would have inevitably discovered the passcode for defendant's phone by the issuance of an <u>Andrews</u> order. Moreover, the Court in <u>Andrews</u> did not hold, nor do we, that the only way to obtain a defendant's passcode is with an <u>Andrews</u> order.

III.

Defendant next contends the trial court abused its discretion in denying defendant's motion to sever counts six (possession with intent to distribute CDS) and seven (possession of CDS) from the remaining counts of the indictment. Defendant asserts the joinder of these counts with the unrelated charges in one trial was more prejudicial than probative, and as a result, defendant was deprived of his right to a fair trial. Alternatively, defendant contends the trial court erred by not giving a curative or limiting instruction on these charges.

We find no error in the denial of defendant's motion to sever counts six and seven of the indictment from the other counts of kidnapping, sexual contact, and aggravated assault. We are also satisfied that the jury instructions, as a whole, were proper and did not unduly prejudice defendant.

23

The decision whether to sever charges in an indictment is a matter left to the sound discretion of the trial court. State v. Urcinoli, 321 N.J. Super. 519, 541 (App. Div. 1999) (citing State v. Chenique-Puey, 145 N.J. 334, 341 (1996)). We review a motion to deny or grant severance under Rule 3:15-1 and -2 for an abuse of discretion, and absent an abuse of discretion, we accord deference to that decision. State v. Weaver, 219 N.J. 131, 149 (2014).

Rule 3:7-6 provides for offenses that are "the same or similar [in] character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan" to be tried together. "[T]he inquiry [] begin[s] with an assessment of whether there is similarity or a connection between charges because one involves evidence probative of another charge." State v. Sterling, 215 N.J. 65, 92 (2013). "Although joinder is favored, economy and efficiency interests do not override a defendant's right to a fair trial." Id. at 72. In other words, "[e]ven if [the] threshold standard is satisfied, the court remains obligated to assess for prejudice, which may require the granting of relief from joinder." Ibid. Thus, Rule 3:15-2 provides for relief from joinder if a defendant or the State is prejudiced by such joinder.

24

In determining whether joinder will result in undue prejudice, "[t]he test is whether the jury could arrive at a decision on each charge separately and irrespective of the evidence concerning guilt on the other charges." Urcinoli, 321 N.J. Super. at 542 (citing State v. Hines, 109 N.J. Super. 298, 306 (App. Div. 1970)). "Central to deciding whether joinder is prejudicial is 'whether, assuming the charges were tried separately, evidence of the offense sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges." Ibid. (quoting State v. Oliver, 133 N.J. 141, 151 (1993)) (internal quotation marks omitted).

Defendant argues the joinder of the narcotics offenses and the labeling of him as a "drug dealer" unduly prejudiced him, depriving him of a fair trial on the remaining charges of kidnapping, sexual contact, and aggravated assault. While we recognize that some potential harm is inherent in the joinder of these offenses, the question is whether the prejudice resulted in an unfair trial, warranting reversal of defendant's convictions. See State v. Coruzzi, 189 N.J. Super. 273, 297-98 (App. Div. 1983).

Here, the crimes charged involved the same transaction or episode, occurring over several days in February 2021. The facts of the kidnapping, sexual contact, and physical assault were intertwined with the drug offenses.

Moreover, as R.B.'s testimony demonstrated, as he walked outside the train station in Newark that first day, his addiction "was obvious." Upon seeing R.B., defendant approached him, asking him "what's going on," and R.B. said, "I'm in a bad place." R.B. explained how he was going to go to a treatment program:

> Um, but one thing . . . led to another, I didn't go and I need a long-term program . . . and we started talking and he started talking as if he knew about it all and how he [—] his brother was in addiction and he understands the struggle and, you know, he's [—] and [—] and I was just [—] it was [—] I didn't question it after that, you know?

In considering defendant's motion to sever, the trial court conducted this "critical inquiry" and analysis pursuant to the four-prong Cofield[4] test. The trial court determined that the evidence of other crimes would be admissible under N.J.R.E. 404(b), and therefore, joinder would not result in undue prejudice. Defendant asserts the trial court's analysis was flawed because it considered the evidence in the context of two victims rather than just R.B.[5] We discern no error in the trial court's analysis.

---

[4] State v. Cofield, 127 N.J. 328, 338 (1992).

[5] Counts eight through ten in the indictment referenced a second victim, D.P. Those counts were dismissed prior to trial.

The trial court aptly noted that N.J.R.E. 404(b) evidence "is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." State v. Garrison, 228 N.J. 182, 193 (2017) (quoting N.J.R.E. 404(b)). "One of the well-recognized dangers inherent in the admission of so-called 'other-crimes evidence' is that a jury may convict a defendant not for the offense charged, but for the extrinsic offense." Id. at 193-94 (quoting State v. Skinner, 218 N.J. 496, 514 (2014)).

However, "[t]his evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b)(2). In determining the admissibility of other crimes or wrongs evidence pursuant to N.J.R.E. 404(b), the court must be satisfied:

> (1) The evidence of the other crime must be admissible as relevant to a material issue;
>
> (2) It must be similar in kind and reasonably close in time to the offense charged;
>
> (3) The evidence of the other crime must be clear and convincing; and
>
> (4) The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Cofield, 127 N.J. at 338 (quoting Abraham P. Ordover, Balancing [t]he Presumptions [o]f Guilt [a]nd

Innocence: Rules 404(b), 608(b), [a]nd 609(a), 38 Emory L.J. 135, 160 (1989)).]

In its analysis, the trial court found that R.B. was offered CDS to induce him to stay in defendant's apartment, and later, was sexually assaulted. Furthermore, R.B. testified that after defendant "smashed [him] in the face," and he was bleeding, defendant gave him heroin to help ease the pain. Afterwards, while R.B. was bleeding and in pain, defendant performed fellatio on R.B. Thus, there was ample evidence to support the trial court's finding that the other crimes evidence was relevant to a material issue of the crimes charged, including the intent to distribute offense.

Although the trial court analyzed the second factor in the context of both victims being confronted with the "same behavior" within "four months of each other," there is no dispute that the crimes against R.B. and the drug offenses occurred reasonably close in time. As to factor three, the court found the text messages retrieved from defendant's phone, pursuant to a valid CDW, demonstrated possession of CDS with the intent to distribute.

Finally, under factor four, the evidence of the narcotics offenses overlapped with the kidnapping and sexual assault offenses and amounted to "intrinsic evidence," which the trial court properly concluded "was part of the restraint that the victim had undergone." Therefore, we discern no error in the

court's conclusion that the evidence of the narcotics offenses "would have come out" and been admissible in a trial on the remaining offenses. Moreover, judicial economy supported joinder.

IV.

We turn next to defendant's contention the trial court erred by not issuing a curative or limiting instruction. Appropriate and proper jury instructions are essential for a fair trial. State v. Scharf, 225 N.J. 547, 581 (2016) (citing State v. Reddish, 181 N.J. 553, 613 (2004)). When a defendant alleges error in the jury charge, the charge must be reviewed as a whole. State v. Loftin, 146 N.J. 295, 379 (1996) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). Moreover, any claimed "error must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

Even though defendant raised the issue of a curative instruction during oral argument on the motion to sever, he failed to request a limiting instruction on the drug offenses before the final jury instruction. Therefore, we review the lack of instruction for plain error. State v. Montalvo, 229 N.J. 300, 320 (2017) (citing R. 1:7-2).

The trial court instructed the jury regarding the State's burden to prove each element of the charges beyond a reasonable doubt. The jury's verdict on the lesser-included-offense of simple assault demonstrates compliance with those instructions. We are satisfied that the record does not support defendant's assertion that a lack of a limiting instruction was capable of producing an unjust result.

V.

Defendant was sentenced to an extended term of imprisonment as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The trial court made certain findings that defendant met the criteria set forth in the statute.

On appeal, defendant contends a remand for a new sentencing hearing before a different sentencing court is warranted because the court abused its discretion in imposing a discretionary extended term and by not considering the "real-time" consequences of the overall sentence.[6]

On June 21, 2024, the United States Supreme Court issued its decision in Erlinger holding that "[t]he Fifth and Sixth Amendments require a unanimous jury," and not a judge, to decide whether a defendant's prior convictions used to

---

[6] On January 23, 2025, we denied defendant's motion for a limited sentencing remand consistent with State v. Carlton.

establish the basis for enhanced sentencing have been proven beyond a reasonable doubt. 602 U.S. at 821. Following Erlinger, on December 19, 2024, we issued our decision in State v. Carlton, addressing the retroactive application of the Supreme Court's decision in Erlinger to pipeline cases. 480 N.J. Super. at 356.

Here, the State consents to a limited remand for the purposes of complying with the bifurcated sentencing procedure established by Carlton. We hold that defendant's extended term sentence must be vacated, and his sentence remanded to the trial court for further proceedings consistent with our opinion in Carlton. Therefore, we need not further analyze defendant's contentions. Defendant is entitled to be resentenced.

However, defendant asserts for the first time on appeal that resentencing occur before a different sentencing court. Defendant did not raise this issue before the trial court seeking recusal pursuant to Rule 1:12-2 and State v. McCabe, 201 N.J. 34, 45 (2010). Thus, we decline to address issues not properly presented to the trial court for consideration. State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

VI.

31

In sum, we affirm defendant's convictions but vacate his sentence and remand for resentencing in accordance with <u>Carlton</u>.

Affirmed in part, vacated, and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

32